(No. 26985.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ELIHU TOTTEN, Plaintiff in Error.

*Opinion filed January 19, 1943.*

J. L. McLAUGHLIN, and U. G. WARD, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and JOSEPH B. SIEMER, State's Attorney, (HARRY S. PARKER, of counsel,) for the People.

Mr. JUSTICE GUNN delivered the opinion of the court:

Plaintiff in error, Elihu Totten, and his wife, Mabel Totten, were indicted for the crime of burglary and grand larceny by the grand jury of Effingham county, and upon a trial were both convicted of petty larceny. Upon writ of error to the Appellate Court for the Fourth District the conviction of Mabel Totten was reversed and that of Elihu Totten affirmed, and he alone prosecutes the writ of error to this court.

Plaintiff in error complains there was not sufficient evidence in the record to support the conviction, and of certain errors in the conduct of the trial. During the night of September 14, 1940, two calves of August Niebrugge

were stolen from his premises and found September 18 upon the farm occupied by plaintiff in error. The proof upon the part of the People consisted of this proof of possession, and showing some footprints in the road near the premises of Niebrugge, claimed to have been made by shoes of plaintiff in error, and of certain declarations made by a deceased person to the sheriff in the presence of the plaintiff in error.

It is the theory of the People that Totten and his wife entered the premises of Niebrugge, seized the two calves in question, dragged them through a wire fence, and put them in the back of an ordinary touring car and transferred them to the home of plaintiff in error, several miles distant. There was no proof that anyone saw Totten in the neighborhood of the Niebrugge farm, and the road traveled by plaintiff in error on the night in question is at least five miles distant therefrom. The claim of the plaintiff in error is that this proof was wholly insufficient to support a conviction, and that in addition evidence offered on his behalf conclusively shows his innocence.

Totten was a substantial farmer engaged in the business of raising livestock, is shown to have had an excellent reputation as a law-abiding citizen, and it is claimed the possession of the calves is adequately and completely explained so as to rebut any presumption arising therefrom. The evidence upon the part of the plaintiff in error shows that upon the evening of September 14, 1940, he and his wife were in a tavern at Sigel, Illinois, in company with a Mr. and Mrs. Horstman, and that they remained there until 11:30 or 12:00 P.M.; that the two women and Mr. Horstman engaged in dancing, but that plaintiff in error did not, because sometime previously he had injured his foot or leg by a fall, and was wearing house slippers. After the Horstmans left, around midnight, plaintiff in error and his wife remained until about 2:30 A.M., and then drove to their home some fifteen miles distant.

and left their touring car in the front yard near their home. The farm upon which they resided was owned by the father of Mrs. Totten, and he resided with them.

The tracks found in the road were of a man's shoe having, it is alleged, a peculiar mark upon the heel, and the other tracks were those made by a woman's high-heeled shoe. No proof was offered of the condition of the inside of the car from the carrying of the calves. On the morning of September 15 the brother of plaintiff in error came to visit him, and saw a truck drive up with two calves, which were unloaded. This is also testified to by plaintiff in error, who stated he had made arrangements with one Thommason, a farmer living in the neighborhood, to deliver the calves in question on the morning of the 15th, to be raised by plaintiff in error on shares. The father-in-law of Totten testified he heard Totten and his wife come in about 3:30 in the morning, drive the car up in the yard near the house, and get out and come into the house immediately. Totten did not know the truck driver, but says that he reported he had been directed to deliver the calves, and unloaded them. Mabel Totten heard the arrangement made with Thommason, and saw the truck arrive with the calves on the morning of the 15th of September.

There is no proof in the record as to the size of the shoes, or of the footprints being similar to those of the shoes of plaintiff in error, or that the sandy road would show the imprint of the mark on the heel of a shoe, and there is no proof that Mrs. Totten owned any high-heeled shoes, but, on the contrary, the proof shows she had no shoes of this type. There is no dispute but that Totten had injured his leg and was required to wear slippers, except when he was running a tractor, when he used a shoe in which the side had been cut away. Both he and his wife testified that for the period of three weeks, when he was in jail, he continued to wear house slippers, and this is not disputed by the sheriff or by any of his deputies.

On the evening of September 14 plaintiff in error and his wife were dressed in good clothes, and no proof was offered tending to show they had been soiled or damaged in any way. Preliminary to the trial a motion was made to suppress evidence consisting of shoes of plaintiff in error, procured by the sheriff's office at his home after he had been confined in jail. Upon hearing the court sustained this motion, but during the course of the trial the court permitted the State's Attorney to open up this question and offer evidence, and then permitted the shoes to be received in evidence. This was improper, as the plaintiff in error was entitled to have this motion passed upon by the court before he entered upon the trial of the case.

The court also, upon behalf of the People, gave an instruction concerning an accessory, and also refused to allow the plaintiff in error to testify to the details of his arrangement with Thommason, concerning the raising of the calves, because it appeared the day of the trial Thommason was dead, or of the conversation with the truck driver, claimed to have delivered the calves. This was important because it is claimed that a statement had been made by Thommason, in the presence of plaintiff in error, that he had not delivered the calves. There is no claim that he had done so in person, but that he had sent them by a truck driver, and this the plaintiff in error was entitled to prove. The giving of the instruction on the question of accessory, where there was no such question raised in the case, was error. (*People* v. *Blades,* 329 Ill. 182.) But it is unnecessary to determine whether the action of the court in changing his ruling upon the motion to suppress, the giving of this instruction, and the ruling on admission of evidence require reversal, because the evidence is wholly insufficient to support the conviction.

We do not require proof to know that two calves do not quietly follow a strange man who comes upon them

in the night. Nor do we overlook the fact that it would require the full strength of a man sound in body and health to seize and take them by force, and drag them through a fence and place them in the rear of an automobile, to say nothing of a disabled man being able to do so. Both the tracks were wholly without probative value, because there was no connection between the shoes of Totten and the tracks made in the road; and the other footprints are those of a woman who possessed shoes of a type different than those of Mrs. Totten. When these facts are considered, together with the proof that the plaintiff in error was a man of substance, bearing an excellent reputation for honesty, and an adequate explanation of the calves being upon the premises, the proof wholly fails to show plaintiff in error guilty beyond a reasonable doubt.

"Where a verdict is returned by a jury in a criminal case, it is the duty of a reviewing court to carefully consider the evidence, and if it is not sufficient to remove all reasonable doubt of defendant's guilt and to create an abiding conviction that he is guilty, the judgment should be reversed." (*People* v. *Downen,* 374 Ill. 146; *People* v. *Fontana,* 356 id. 461.) "While circumstantial evidence may be relied upon for conviction, the circumstances proved must be sufficient to establish the guilt of defendant beyond a reasonable doubt." (*People* v. *Buxton,* 362 Ill. 157; *People* v. *Samaras,* 355 id. 431; *People* v. *Bentley,* 357 id. 82.) The evidence in this case is not sufficient to prove the defendant guilty beyond a reasonable doubt.

The judgments of the Appellate Court for the Fourth District and of the circuit court of Effingham county are reversed.  *Judgments reversed.*