**O. A. ROGERS, and WILLIE GRAY v. STATE OF FLORIDA**

30 So. (2nd) 625                                         January Term, 1947
February 7, 1947                                                    En Banc
Petition for Rehearing granted April 12, 1947

*Pat Whitaker* and *E. M. Magaha,* for appellants.

*J. Tom Watson,* Attorney General, *Reeves Bowen,* Assistant Attorney General, and *Jesse F. Warren,* Special Assistant Attorney General, for appellee.

FABISINSKI, Associate Justice:

The defendants were convicted under the first two counts of an information containing four counts, all relating to violations of our statutes relating to lotteries.

In the briefs of counsel for the defendants, much space is devoted to the sufficiency of the first count, the effect of the acquittal of the defendants under the last two counts upon the conviction under the first count, and other related matters. We consider that an elaborate discussion of these matters would serve no useful purpose. The second count charged the defendants with the offense of conducting a lottery, and as to each of the defendants, the trial court adjudged them to be guilty "of the crime of conducting a lottery, as charged in counts one and two of the information." Rogers was sentenced to be imprisoned for a period of eighteen months on each of the counts, to run concurrently. Gray was sentenced to six months' imprisonment in general terms without specification of the count or counts under which he was sentenced. Accordingly, if the second count is a sufficient legal basis for the judgment and sentence, we need not concern ourselves with the many legal complications arising out of a discussion of the first.

The second count is sufficient in form. The attack on this count is confined to alleged error of the trial court in denying

a motion for a bill of particulars. This motion was made by Rogers alone. The case of Jarrell v. State, 135 Fla. 736, 185 So. 873, sufficiently answers the contentions of the defendant upon this assignment of error. Counsel urge the point that the Jarrell case was decided before the Criminal Code was adopted, and that the Code has enlarged the right of accused persons to a bill of particulars. We are unable to agree with this contention. The Criminal Code merely re-stated the existing law upon this subject, and leaves a wide discretion to be exercised by the trial court. In view of the entire record, no abuse of such discretion is shown here.

Probably the most damaging evidence against the defendants was that secured by a search of their persons upon arrest. It is strenuously urged that the arresting officers had no such probable cause to believe that a felony was being committed, as to justify the arrest of the defendants without a warrant; and that all the evidence obtained by a search of their persons should be suppressed.

In the preliminary investigation leading up to the arrest, the sheriff and three of his deputies participated in varying degrees, but in more or less constant collaboration with each other, and with informants. Each of them had reports as to the activities of Rogers, some from the same individuals, and some from separate sources of information, rather vague in their nature, and with one notable exception, unnamed at the trial. One Dr. M. F. Johnson, himself convicted of an offense related to the conduct of lotteries, had informed the investigators that Rogers "was in the bolita racket." Three of the four investigators had had the defendants under surveillance for periods varying from several days to several months. (Gray came into the picture only in the last stages of the investigation).

The four investigators had pooled the information which they had severally gathered, at one or more conferences held in the office of the sheriff at various times over a period of some four or five months immediately preceding the arrest.

The sheriff unquestionably had the benefit of all the information gathered by himself and each of his three deputies

while the investigation was going on; he had consolidated and analyzed the information which had been thus gathered, and had determined upon the arrest on the night it occurred, if Rogers and Gray met at what he considered their meeting place to exchange the paraphernalia of the lottery, and did actually make such an exchange. Deputy Baker went in company with the sheriff to the home of Rogers, and each concealed himself from view as best he could. Deputy Baker was instructed by the sheriff to make the arrest only if he saw a package exchanged. The deputy was the sheriff's agent, acting in the (concealed) presence of the sheriff, (who, more than any other of the investigators, had cause to believe that a felony was about to be committed), and he was acting under the direct orders and supervision of the sheriff.

We must determine the sufficiency of the knowledge of the sheriff and his deputies, not by an analysis of the effect of each known circumstance in isolation, but by a conclusion as to what a reasonable man, knowing all the facts which the sheriff knew, would have believed under all the circumstances; applying this principle, it would be difficult to escape the conclusion, viewing the entire record as it relates to this investigation, that the defendants were engaged in the promotion of a lottery at the time of their arrest.

At the trial, two witnesses were used by the State, whose testimony is challenged in toto by the defendants upon the ground that the testimony of these witnesses was not calculated to connect the defendants directly in any way with the commission of the offense with which they were charged, and that it was prejudicial in its nature because of the insinuation that these defendants were connected with the lottery which the witnesses admitted being engaged in.

Without going at length into the testimony of these witnesses, their evidence was properly admitted. They were, if the State's theory was correct, accessories before the fact to the offense alleged to have been committed by the defendants. They outlined their connection with certain papers found in the possession of the defendants, and their testimony, with the testimony of a third witness who was also an accessory, connected the witnesses with the defendants in a scheme for

conducting a lottery. Any uncertainty in parts of their testimony went to the weight to be given to their testimony by the jury, rather than to its admissibility.

Finally, it is contended that the prosecutor, in his argument before the jury, made prejudicial and inflammatory statements, and appealed to the avarice and cupidity of the jury as taxpayers, which ought to require a reversal, although not objected to at the trial. The defendants rely on the principles enunciated in the case of Akin v. State, 86 Fla. 564, 98 So. 609, and other cases following that decision.

The willingness of this Court to reverse a case because of highly prejudicial and inflammatory statements made by a prosecutor, should not be abused by invoking it too freely where the situation does not warrant such extreme measures.

In the strain of a hotly contested trial, errors of judgment, and sometimes thoughtless injustices, are bound to insinuate themselves, even where the court and counsel are motivated by the highest ideals of justice and where exist the best of intentions to refrain from injecting into the trial any prejudicial matter. In order to reduce these to a minimum counsel and the Court are required to be continuously on the alert.

We have sensed an inclination upon the part of some counsel to shift the responsibility for the decision of what is, and what is not, prejudicial argument, upon the shoulders of this Court, without themselves sharing some part of this responsibility, and we do not mean to confine this observation to defense counsel, although they are usually most interested in taking advantage of errors arising in this respect. It is often difficult in the heat of argument to distinguish quickly between permissible and prejudicial argument. Often the most prejudicial statements begin with a more or less innocuous statement, bordering on what is not permissible, and are followed by highly prejudicial matter which is uttered on the spur of the moment, giving neither counsel nor court an opportunity to stop its utterance before the damage is done. With such cases the Court is prepared to deal, and has dealt, with unhesitating firmness, and has in the past reversed cases where any injustice might conceivably have been done.

In the case before us no such situation is made to appear. Counsel for the defense seem to have been themselves uncertain as to whether the remarks of counsel were prejudicial. This is indicated by their failure to then and there object. As a matter of fact, the remarks are not before us in any authenticated form.

It is stated in argument on this assignment that one of the counsel for the defense took down in shorthand the alleged prejudicial remarks of counsel, and preserved them; after conviction of the defendants they were transcribed and formed the basis of grounds for motion for new trial. As we have already noted, no objection was made to the remarks, the court was not requested to instruct the jury to disregard them, nor was there a motion for mistrial.

While it is expected of the trial judges that they will be themselves on the alert for occurrences such as are here vehemently condemned by counsel for defense, yet it is the duty of counsel to call the attention of the court to occurrences which appear to counsel to be improper and prejudicial to their clients. We know as a matter of human nature that trial judges are not always listening attentively to argument of counsel, and often are engaged with other duties incident to the trial, such as preparation of instructions, while the argument is going on. If counsel for defendants, in laudable zeal for their client's interests, are sufficiently alert to take notes of what may later develop to offer possibilities of error they should call attention to such occurrences if they feel an injustice has been done accused. If it did not seem of sufficient consequence at the time it occurred to warrant an objection, we would seem to be justified in concluding that it was not highly prejudicial.

It is urged on behalf of the Attorney General that the remarks were retaliatory in their nature, and justified upon that ground. We need not decide this, but in view of the entire record, and what we have already said, we do not feel disposed to take notice of the quoted remarks beyond reminding counsel generally that justice will be much more fairly administered if they do not go beyond the limits of fair discussion, and to call upon trial courts to be ever vigilant in their at-

tempts to prevent occurrences of this kind. It would be better to err on the side of two great a restriction than too little.

Error is assigned for the failure of the court to give certain instructions requested by counsel for the defense, dealing with the factual situation arising out of the arrest without a warrant. If such charges are pertinent, which we need not here decide, the court was not in error in refusing the charges, since they directed the jury to *acquit* the defendants, if the jury found insufficient basis in fact for the arrest without warrant, instead of instructing the jury to disregard the evidence obtained by a search of the accused incident to their arrest. No error is made to appear in this regard, especially in view of what we have already said as to the arrest.

The remaining assignment of error deals with the sufficiency of the evidence to warrant a conviction. There is without any question sufficient legal evidence in the record to justify the action of the jury, and this assignment is not well taken.

Affirmed.

THOMAS, C.J., CHAPMAN, ADAMS, and BARNS, JJ., concur.

TERRELL and BUFORD, JJ., dissent.