110 So.2d 709 (1959)
Gus GARCIA, Appellant,
v.
STATE of Florida, Appellee.
No. 625.
District Court of Appeal of Florida. Second District.
April 3, 1959.
G. Richard Christ, Tampa, for appellant.
Richard W. Ervin, Atty. Gen., and George R. Georgieff, Asst. Atty. Gen., for appellee.
KANNER, Chief Judge.
Appellant, having been found guilty of violation of the lottery laws of the State of Florida, has instituted appeal from this judgment and the sentence imposed by the trial court. Appellant questions, in effect, whether there was authority, under the circumstances of this case, for an arrest to have been made without a warrant, pursuant to the provisions of section 901.15, Florida Statutes, F.S.A.
A summary of the proceedings in the trial court and of the events leading to appellant's arrest and conviction will set forth the basic components of this cause. Appellant was brought to trial under four counts of an information charging that he had violated the lottery laws. He was *710 found guilty under the first three counts; new trial was denied and sentence was imposed.
Testimony of the two officer witnesses and of the captain of the Hillsborough County vice squad discloses that the two officers had kept the home of appellant's mother under surveillance for several weeks prior to the arrest because they had been informed by the chief of the vice squad that this residence was being used as what is known as a "bolita calling house." They had been instructed by the vice squad captain that they should arrest anyone leaving this particular house shortly before two o'clock on any Saturday afternoon carrying a brown paper bag. This instruction, according to testimony of the vice squad captain, emanated from certain information which he had gleaned and which gave him reasonable cause to believe that in this manner a felonious act involving bolita operations and transportation and possession of bolita paraphernalia would be committed.
The testimony reveals that a confidential informant had apprised the vice squad captain, Ellis Clifton, that the particular house was a bolita calling house, that Clifton had personally watched the house as he testified "I had been observing the house myself three weeks previous to this and I had checked out the information that I had received and verified it to the extent I believe we had reason to believe to make an arrest", and further that Clifton had made phone calls to the phone listed at that address. There is testimony that bolita pickups were always made shortly before two o'clock on Saturday afternoon at about which time the winning number in the Cuba national lottery is announced. On the Saturday afternoon one week prior to the appellant's arrest, a man in a yellow shirt was observed leaving the house with a paper bag at approximately this time. There is also testimony that shortly prior to the time of the arrest, a woman was seen to come out of the house onto the porch several different times, where she stood around and looked up and down the street before going back into the house. On the Saturday afternoon of appellant's arrest one of the two officers watching the house saw appellant enter the residence at about 1:12 p.m. and saw appellant leave about five minutes thereafter carrying a brown paper bag. The officer observing this signaled to and was joined by the other officer. The two proceeded in a car to the place where appellant was walking and one of them approached him and asked what the bag contained; whereupon appellant started to hand the bag to the officer, who then told him he was under arrest. The bag was then examined and found to contain bolita tickets.
It is appellant's contention that his arrest was barred under Florida law on the basis that no search or seizure can be made without a warrant, except as may be allowed by law incident to a lawful arrest, Haile v. Gardner, 1921, 82 Fla. 355, 91 So. 376, and that illegally obtained evidence should be disallowed if proper objection is made, Gildrie v. State, 1927, 94 Fla. 134, 113 So. 704. He insists that, had the lottery tickets not been introduced into evidence over his objections, there would have been no evidence against him.
Section 901.15(3), Florida Statutes, F.S.A., provides that an arrest may be made by an officer when he has reasonable ground to believe that a felony has been or is being committed and reasonable ground to believe that the person to be arrested has committed or is committing it. Under section 901.21(1), Florida Statutes, F.S.A., any law enforcement official is authorized to make a lawful search if it is incident to a lawful arrest.
It may be observed that both officers involved in the arrest episode and the captain of the vice squad who had instructed them are men experienced and trained in the ways of bolita operators and aware of the manner in which bolita processes are conducted, that they were upon notice that the house under observation was being used as a bolita calling house, and that they were aware of the time and manner in which a *711 felonious act involving bolita operations and the transporting and possession of lottery paraphernalia from the particular house involved, should take place.
In the case of Rodriguez v. State, Fla. 1952, 58 So.2d 164, certain officers, having reason to believe that a felony involving violation of the lottery laws had been or was being committed at a particular place, proceeded there and arrested the appellant when they saw him with a pencil in his hand and pads on the counter before him, although they made no search nor seizure until after the arrest had been made. The court concluded that the officers, being thoroughly familiar with lottery operations, had reasonable grounds, including the information they had received, to believe that a felony was being committed when they observed the appellant in the attitude above described. It was determined that the arrest made and the search and seizure that transpired were legal.
Of similar effect is the decision of the Supreme Court and the material elements of the case as seen in Mitchell v. State, Fla. 1952, 60 So.2d 726. In that case, a certain bolita operator, whom the officers had been following and watching because of information they had received, was seen to throw away a package when he observed the officers approaching him; whereupon the officers arrested him, later determining that the package contained bolita paraphernalia. The court ruled that this paraphernalia, later introduced into evidence, did not comprise unlawfully obtained evidence. See also the case of Diaz v. State, Fla. 1949, 43 So.2d 13.
In the case of Pflegl v. State, Fla. 1957, 93 So.2d 75, the factual situation involved a series of filling station robberies which had occurred. After this an informant told two police officers that he had seen a certain automobile, which he identified by its license number, stop near a filling station and that a man wearing gloves and carrying a crowbar got out of the car. Upon receiving this information, the police officers, knowing of the robberies, proceeded to the filling station and observed an automobile such as had been described and having the same license number drawing away. They stopped the automobile and required its driver to get out. They observed a glove sticking out of the driver's pocket, "frisked" him for weapons, and observed an adding machine, one of which had been reported stolen, in the car. It was held that in this situation the arrest without a warrant was justified.
In determining whether there existed reasonable ground to believe that a felony was being committed and reasonable ground to believe that the person to be arrested was committing it so as to authorize arrest without a warrant, the Supreme Court in Rogers v. State, 1947, 158 Fla. 582, 30 So.2d 625, pointed out that sufficiency of the knowledge of an officer of the law must be determined, not by an analysis of each known circumstance in isolation, but by a conclusion of what a reasonable man, knowing all the facts which such officer had within his ken, would have believed under all the circumstances. Recognition has been given to the qualifications which appertain to officers of the law experienced and trained in the making of bolita investigations and their specialized knowledge of the various phases of its operation. See Fletcher v. State, Fla. 1953, 65 So.2d 845.
Subject to certain limitations, it is the rule, based on sound public policy, that the identity of an informant who gives information concerning the commission of a crime is privileged. Wigmore on Evidence, Third Edition, section 2374; and Harrington v. State, Fla.App., 110 So.2d 495. The identity of any informant in the present case was not within any exception to the general rule nor determinative of the issue, nor was it raised.
Under the circumstances of this case and in view of the decisions of the Florida Supreme Court with reference to somewhat similar situations, it is the opinion of this court that appellant's contention that he was unlawfully arrested and that *712 evidence thus seized was unlawfully obtained is without foundation. The arrest and subsequent inspection of the contents of the paper bag carried by appellant was within the logical and reasonable sequence of what patently was a careful surveillance and investigation of a particular house for a particular occurrence to be carried out in a specified manner according to specific information received and bolstered by the investigation.
The judgment and sentence of the trial court is accordingly affirmed.
SHANNON, J., concurs.
FARRINGTON, OTIS, Associate Judge, dissents.
OTIS FARRINGTON, Associate Judge (dissenting).
This is an appeal from the judgment and sentence imposed on appellant following his conviction of violations of the lottery laws of the State of Florida. Appellant contends that the trial court erred in denying appellant's pre-trial motion to suppress certain evidence consisting of a brown paper bag containing bolita paraphernalia, which motion was based on appellant's contention that the incriminating evidence was obtained by an unreasonable, illegal and invalid search of his person. The questioned evidence was subsequently received at the trial over appellant's objection.
The evidence received at the trial, including the questioned evidence, amply supported the verdict. Had the questioned evidence been excluded at the trial, the remaining evidence would have been insufficient to support a conviction of appellant.
The procedure of pre-trial determination in criminal cases of the admissibility vel non, of evidence alleged to have been obtained by unreasonable and illegal search and seizure is approved in Florida. Robertson v. State, 1927, 94 Fla. 770, 114 So. 534. At the hearing on the motion to suppress, the burden of proof is upon the defendant to establish that the evidence which he seeks to have suppressed has been illegally obtained. Wharton's Criminal Evidence (12th Ed.) Sec. 701 p. 713; Ludwig v. State, 97 Okla. Cr. 100, 259 P.2d 322.
The chief purpose of such pre-trial motion is to prevent interruption of the trial in chief for determination of the collateral issue of the admissibility of the proffered evidence as against the objection that it was illegally obtained. Although the defendant will be deemed to have waived his objection to the admissibility of the proffered evidence if he fails to make timely objection when it is offered at the trial, Robertson v. State, supra, further inquiry into the question of its admissibility should be prohibited at the trial, since the defendant is entitled to have this question determined before he enters upon the trial of the case. See Annotation 52 A.L.R. 477-489, 485; People v. Totten, 1943, 381 Ill. 538, 46 N.E.2d 70, 72. However, if further testimony bearing on its admissibility is received during the progress of the trial, such additional testimony as well as the testimony received at the hearing on the pre-trial motion may be considered by the Court in ruling on the admissibility of the proffered evidence at the trial. Brown v. State, Fla. 1950, 46 So.2d 479; Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790.
At the hearing on the motion to suppress the evidence in the instant case it was disclosed that appellant was arrested by a deputy sheriff of Hillsborough County, Florida, at approximately 1:15 o'clock p.m. on November 30, 1957, shortly after appellant came out of a house at 2012 North Howard Avenue, Tampa, Florida. At the time of the arrest appellant was carrying a brown paper sack which, as disclosed by subsequent search by the arresting officer, contained bolita paraphernalia. The arrest and search of appellant was without benefit of either warrant for his arrest or search warrant.
The testimony of appellant as to the circumstances of surrendering the brown *713 paper bag containing the incriminating evidence to the arresting officer varied slightly from the version related by the officer. Since, in overruling appellant's objection to the questioned evidence, the trial judge was justified in accepting the officer's version of the incident, we will proceed to determine whether the search was legal under the circumstances related by the State's witnesses. On this point the arresting officer testified as follows:
"I asked him what he had in the sack. He started to hand me the sack, and I told him he was under arrest. I stated, `You are under arrest for lottery law violation'. And he went on and handed me the sack and I opened it up and it had numerous bolita tickets in it. I placed him in the car and went to the county jail".
Appellee contends that the search was legal because: (1) appellant voluntarily surrendered the brown paper bag, thereby consenting to the search; (2) the search was justified as incidental to a lawful arrest.
The first contention may be disposed of by holding that since appellant was placed under arrest prior to yielding possession of the bag containing the incriminating evidence, his handing the bag to the officer without objection did not amount to a voluntary consent to the search. An arrested person has no legal right to resist a search by the arresting officer of articles in his open possession. F.S. Sec. 901.21, F.S.A. Compliance with the officer's request without stated objection under these circumstances, where appellant had no apparent right to resist, did not amount to consent.
This leaves for consideration appellee's second contention that the search of appellant was authorized as incidental to a legal arrest. The arrest of appellant without a warrant was authorized by law only if the facts and circumstances within the knowledge of the arresting officer, and of which he had reasonably trustworthy information, at the time of the arrest were sufficient in themselves to warrant a man of reasonable prudence and caution in believing that appellant was guilty of violating the lottery laws of the State of Florida. F.S. Sec. 901.15(3), F.S.A.; Carroll v. United States, 267 U.S. 132, 161, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790.
The legality of appellant's arrest without warrant having been challenged for want of probable cause, it became the duty of the trial judge to receive testimony as to what facts and circumstances were within the knowledge of the arresting officer, or of which he had reasonably trustworthy information at the time of the arrest, so that the Court could measure the same against the standard of whether a reasonably prudent and cautious man would thereby believe appellant guilty of violating the lottery laws.
The testimony taken in connection with the pre-trial motion to suppress the evidence and at the trial disclosed that three deputy sheriffs were involved in the proceedings leading up to the arrest of appellant. The arresting officer, Deputy Whitt, in arresting appellant was acting under orders of the vice squad captain, Ellis Clifton. Orders by a superior officer to make an arrest, where the arresting officer has no reasonable grounds to believe the accused guilty of a criminal offense, are insufficient to justify an arrest without a warrant, People v. McGurn, 341 Ill. 632, 173 N.E. 754, unless it be shown that the superior officer had probable cause for ordering the arrest. Therefore, in determining whether there was probable cause for the arrest it was proper for the trial judge to consider the knowledge of Captain Clifton as well as the knowledge of the two officers present at the scene of the arrest. Rogers v. State, 158 Fla. 582, 30 So.2d 625.
Deputy Whitt testified that the officers had information through a confidential informer that the house at 2012 North Howard Avenue was a bolita calling house; that the house had been under observation for four weeks prior to the arrest; that Captain Clifton had made phone calls to *714 the house; that Captain Clifton had instructed him to arrest anyone who came out of the house carrying a sack or paper bag or anything like that; that from his previous experience in bolita investigations he knew bolita coming from a calling house is supposedly taken to a check-up house before or around 2:00 o'clock p.m. on Saturdays; that prior to the arrest he observed appellant go into the house at 2012 North Howard Avenue and after about five minutes come out of the house carrying a brown paper sack; that he immediately placed appellant under arrest and examined the contents of the brown paper bag.
The testimony of Deputy Meisch, who was present at the scene of the arrest, corroborated the testimony of Deputy Whitt but added nothing on the question of probable cause for appellant's arrest except that the previous week he had been watching the same house and had seen a man wearing a yellow shirt coming out of the house with a paper bag. At the time of the arrest Deputy Meisch did not know whether or not appellant was the same man he had previously seen coming out of the house.
Captain Clifton testified that he was the head of the county vice squad; that he had many years experience in the investigation of lottery cases and was familiar with the operating methods of persons involved in the illegal bolita lottery in Hillsborough County, Florida; that "between 12:00 noon and 2:00 p.m. on Saturday is the time they usually transport the bolita from the call-in house where the telephone is situated to the banker, or whoever is going to check it up for them"; that he gave the instruction to arrest any one coming out of the house in question; that he had been observing the house for three weeks prior to appellant's arrest and "had checked out the information I had received and verified it to the extent I believe we had reason to believe (sic) to make an arrest".
It is apparent from examination of the testimony of the officers on the question of probable cause for the arrest of appellant that there was no disclosure of the specific facts upon which the officers based their determination that such probable cause existed. Their testimony that they had information from a confidential informer that the house was a bolita "calling house" should have been given little weight in the absence of disclosure of the identity or reliability of the informer. Captain Clifton's statement that he had checked out the information and verified it amounted to a mere recital of a conclusion of fact. The allegations of the officers that they had observed the house and made telephone calls to the house with undisclosed results would not properly support an inference that these actions uncovered any incriminating information. Similar recitals of conclusions and alleged beliefs grounded on information from persons unknown or unnamed have long been condemned by the Florida Supreme Court as being insufficient to support a judicial determination of probable cause. See Davis v. State, 113 Fla. 713, 152 So. 6, involving recitals in an application for a search warrant, and Collins v. State, Fla. 1953, 65 So.2d 61, involving question of probable cause for search of a vehicle without a warrant.
At the hearing on the pre-trial motion to suppress the evidence the prosecuting attorney attempted to elicit from Deputy Whitt the specific information upon which he based his conclusion that he was justified in arresting appellant without a warrant for violating the lottery laws. Defendant's attorney objected on the ground that such evidence would be hearsay, which objection was sustained by the Court. This ruling was error. In determining the question of whether or not Officer Whitt had probable cause for arresting appellant without a warrant, which was the issue at this pre-trial hearing before the Court, the information on which he acted, whether true or false, was original and material evidence, and not hearsay. Wigmore on Evidence (Third Ed.) Vol. VI Sec. 1789; Wharton's Criminal Evidence (12th Ed.) Vol. 1, Sec. 257.
*715 Although ordinarily appellant would not be permitted to take advantage of the Court's erroneous ruling in sustaining his attorney's objection, the situation here is that the Court's refusal to permit testimony regarding the specific information on which the arresting officer acted resulted in there being insufficient evidence of the facts and circumstances within the knowledge of the officers involved to support a judicial determination by the Court that there was probable cause for the arrest of appellant without a warrant.
It is my opinion that the judgment of conviction should be reversed and remanded for a new trial including a reconsideration of the motion to suppress the questioned evidence, after full disclosure of the facts and circumstances upon which the officers involved relied to establish probable cause for appellant's arrest without a warrant.
For the reasons stated, I respectfully dissent from the majority opinion.