179 So.2d 873 (1965)
Rosalie Jean SPATARO, Appellant,
v.
STATE of Florida, Appellee.
No. 5742.
District Court of Appeal of Florida. Second District.
November 2, 1965.
*875 George Schwartz, Miami Beach, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and Arden M. Siegendorf and James Carlisle, Ass. Attys. Gen., Miami, for appellee.
ANDREWS, Judge.
The defendant, Rosalie Spataro, has appealed a judgment and sentenced entered against her for the unlawful possession of narcotic drugs in violation of § 398.03, Florida Statutes, F.S.A.
On December 18, 1963 an informer, whose name was not disclosed, advised a Broward County Deputy Sheriff that marijuana cigarettes were being smoked and stored in a house occupied by Constance Doles, located in the City of Miramar, Florida, The house was owned by Doles' brother. The deputy sheriff and the informer went to Doles' house together. After arriving there, the officer searched the informant and found no marijuana cigarettes on his person. He then gave the informant a dollar bill and instructed him to go to the house and attempt to purchase a marijuana cigarette. While the officer watched, the informant went into the house, remained inside for about five minutes and returned directly to where the officer was waiting. Upon searching the informant, the deputy sheriff found a marijuana cigarette in the informant's coat pocket. The informant told the deputy that he purchased the marijuana cigarette from a "female" inside for the sum of one dollar.
Eight days later a search warrant was issued on the basis of an affidavit signed by the deputy sheriff which set forth the above facts. The informant did not appear before the judge who issued the warrant. Pursuant to the warrant, a search of the house was conducted and marijuana was found in the second drawer of a dresser located in the master bedroom and in a suitcase beside the dresser. More was found in the clothes closet in the same room. Doles was present during the search of the premises, but the defendant Spataro was not. The defendant Spataro testified that she came to Florida in early December 1963, and was living temporarily with Doles and the latter's minor children. Doles and the defendant shared the master bedroom where the narcotics were found.
Doles was arrested for the unlawful possession of narcotic drugs and taken to the county jail. During the search, the defendant called Doles on the telephone. Through a mutual friend the defendant had been advised that the police were at the house, and that Doles wanted the defendant to contact her. According to the defendant, Doles told her that she was being arrested, and that the police were looking for her. The defendant testified that she later called the county jail and was asked to come in for questioning; that she voluntarily went to the county jail; and that upon arriving there was charged with unlawfully possessing narcotics. The defendant and Doles were charged as co-defendants. Sometime *876 thereafter the State obtained a severance, and the defendant was tried separately.
At the defendant's trial Doles testified as a witness for the State. She testified that the first, third and fourth drawers of the dresser were used by her, and that she emptied the second drawer and allocated it to the defendant. The closet was shared by both women. She further testified that the narcotics did not belong to her, and that she had never seen any of it prior to the discovery of it during the search. The defendant testified that "everyone had access to the room," and that Doles "was in and out of [her] drawers." She also denied ever having seen the marijuana and claimed that it did not belong to her.
After the defense rested, the State reopened its case and put Doles back on the stand. Doles stated that when the defendant called her on the telephone during the search of the house, she told the defendant that the police were there and that they were searching the premises, to which the defendant replied, "Did they find the stuff in the gold purse?" The witness stated that the purse belonged to her, but that the defendant had borrowed it two nights prior to the search. A gold purse was later found, but nothing was found inside of it. A police officer who was present during the search testified that he listened in to the conversation related by Doles. Since the officer could not identify the voice as that of the defendant, his testimony was admitted only to show that a call was received and was not allowed to establish the truth or falsity of what was said.
There was testimony to the effect that a policeman, while dressed in plain clothes, visited Doles at her home on December 18, 1963 for about thirty minutes. The defendant intimated that the said policeman, who had known Doles for about a year and a half, was the informer. The prosecutor, however, while arguing on the defendant's motion for a directed verdict, stated that the policeman was not the informer referred to in the affidavit.
The trial judge denied the defendant's motion for a directed verdict and, the defendant having waived a jury trial found her guilty of the crime of unlawfully possessing narcotic drugs. The defendant was sentenced to a term of six months to five years imprisonment.
On appeal, the defendant contends that (1) the court erred in denying her motion to suppress the evidence; (2) in sustaining an objection interposed by the State when the defendant asked the deputy sheriff for the informer's name; and (3) in denying her motions for a directed verdict grounded on the insufficiency of the evidence.
We hold that the trial court did not commit error in failing to grant the defendant's motions for a directed verdict. Where a case is tried by a judge, a jury trial having been waived by the defendant, the factual findings of the judge are entitled to the weight of a jury verdict. See 2 Fla.Jur., Appeals § 346, and cases cited therein. Furthermore, this court must assume that the jury, in this case the trial judge, believed the credible testimony most damaging to the defendant, and drew from the facts established those reasonable conclusions most unfavorable to her. Parrish v. State, Fla.App. 1957, 97 So.2d 356. It is apparent from the verdict that the trial judge chose to believe the testimony of Doles over that of the defendant. Doles, the only person (aside from the children) other than the defendant who had access to, or control of, the room where the drugs were found, denied knowledge of its presence and ownership thereof. The trial judge as the factfinder was entitled to accept her disclaimer, the result of which was to leave the defendant as the only reasonable person who could have placed the narcotics where they were found. Evans v. United States, 9 Cir.1958, 257 F.2d 121. The defendant's knowledge of the presence of the narcotics could be inferred from her statement to Doles over the telephone.
The precise question which we must decide is whether or not such facts support *877 the finding that the defendant unlawfully "possessed" a narcotic drug within the meaning of § 398.03, Fla. Stat., F.S.A. This statute is a section of the Uniform Narcotic Drug Law, § 398.01, Fla. Stat., F.S.A., which has been adopted by 46 states, the District of Columbia and Puerto Rico. What constitutes "possession" of a narcotic drug within the meaning of the Uniform Narcotic Drug Act is the subject of an extensive annotation in 91 A.L.R.2d, beginning at page 810. At this date, the Florida courts have not been called upon to define the word "possess" as it is used in § 398.03, Fla. Stat., F.S.A. The Florida Supreme Court, however construed the word "possession" in a case dealing with the unlawful possession of intoxicating liquor in Reynolds v. State, 1927, 92 Fla. 1038, 111 So. 285. The definition that the Supreme Court gave to the word "possession" in the Reynolds case is basically the same as that given by the state courts from other jurisdictions in interpreting the Uniform Narcotic Drug Act. The Reynolds case and the cases referred to in the annotation, supra, require the state to prove that the defendant had physical or constructive possession of the object or thing possessed, coupled with his knowledge of its presence.
The accused has "constructive possession" of a chattel where he has knowledge of its presence coupled with the ability to maintain control over it or reduce it to his physical possession, even though he does not have actual personal dominion. People v. Fox, 1962, 24 Ill.2d 581, 182 N.E.2d 692. The courts have not encountered difficulty where the accused has had "exclusive" control or access to the property where the chattel was found. This has not been true, however, in those cases where several people have had access to the propperty, and the defendant had only constructive possession. It should be noted that possession need not be "exclusive," but may be joint with one or more persons. Bourg v. United States, 5 Cir.1960, 286 F.2d 124. Evans v. United States, supra, is quite similar to the case presently before this court. That court, in finding the evidence sufficient to support the verdict, stated:
"Where one has exclusive possession of a home or apartment in which narcotics are found, it may be inferred * * * that such person knew of the presence of the narcotic and had control of them.
"* * * But [where the accused has not been] in exclusive possession of the premises, it may not be inferred that he knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference." 257 F.2d 121, 128.
Compare Guevara v. United States, 5 Cir.1957, 242 F.2d 745, and People v. Antista, 1954, 129 Cal. App.2d 47, 276 P.2d 177, with People v. Roberts, 1964, 228 Cal. App.2d 722, 39 Cal. Rptr. 843, and Evans v. United States, supra.
The evidence warranted the conclusion that the defendant knew of the presence of the narcotics, and that she had an ability to reduce it to her personal dominion. This was sufficient to show "constructive possession," and hence the unlawful possession within the meaning of § 398.03 Fla. Stat. F.S.A. (1963).
Before discussing the defendant's second and third points on appeal we want to point out that an informer's identity may become significant for two distinct reasons. Rugendorf v. United States, 1964, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887. It may be necessary in order to establish "probable cause" for the lawful issuance of a search warrant, Aguilar v. State of Texas, 1964, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, and it may be relevant and helpful to the defendant in preparing his defense. Roviaro v. United States, 1957, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639; Rugendorf v. United States, supra.
*878 The defendant contends that the trial court erred in denying her motion to suppress the evidence found during the search on the grounds that the warrant was illegal. The defendant contends that it was necessary to disclose the informant's identity in order to establish the existence of "probable cause" without which the warrant could not be legally issued. Of course, if the affidavit did not establish probable cause, the evidence would have been inadmissible as evidence. The defendant's contention is without merit. A reading of the affidavit shows that the evidence, exclusive of the informer's communications, was sufficient to establish "probable cause." Where such is the case, disclosure is not required. United States v. Ventresca, 1965, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684; Rugendorf v. United States, supra; Ferrara v. State, Fla. 1958, 101 So.2d 797; Harrington v. State, Fla.App. 1959, 110 So.2d 495, appeal dismissed 113 So.2d 231; Anno: 76 A.L.R. 2d 262 (1961). Compare the foregoing cases with Aguilar v. State of Texas, supra.
The defendant's last contention is that the trial court committed reversible error in failing to require a prosecution witness to divulge the name of the informer on cross-examination. The defendant contends that the informer's identity was necessary and relevant to her innocence or guilt, and that his testimony would be helpful to her in the preparation of her defense. Our review of the record and the cases cited hereinafter convinces us that this contention must be sustained.
The prosecution's privilege to withhold the identity of a confidential informer has been recognized in this state in State v. Hardy, Fla.App. 1959, 114 So.2d 344; Garcia v. State, Fla.App. 1959, 110 So.2d 709; Harrington v. State, supra; and Chacon v. State, Fla. 1957, 102 So.2d 578. The leading case on this subject is Roviaro v. United States, supra. The Supreme Court of the United States in the Roviaro case stated that "[w]here the disclosure of an informer's identity, or the contents of his communication is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way," Roviaro v. United States, supra, 353 U.S. at p. 60, 77 S.Ct. at p. 628, and that where such is the case, the "trial court may require disclosure and, if the Government withholds the information, dismiss the action." The First District Court in State v. Hardy, supra, and in Harrington v. State, supra, recognized this limitation upon the non-disclosure privilege. That court stated:
"What we have said is not to be construed as indicating that such disclosure is absolutely privileged. The trial court may compel the disclosure when necessary to avoid the risk of false testimony or to secure useful testimony. 3 Wigmore on Evidence, 3 Ed., 1955 Section 2374. The rule is succinctly stated in Wharton's Criminal Evidence, 12 Ed., 1955, Section 795, page 136: `The distinction is materiality. When such information is material to the issue, it cannot be withheld. But when it is immaterial the courts will not compel its disclosure.'" 110 So.2d 495, 497.
As to the question when the privilege of non-disclosure applies and when an exception should be made and disclosure required, no "fixed rule * * * is justifiable." Roviaro v. United States, supra. As the Supreme Court stated in Roviaro:
"The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." (Emphasis supplied) 353 U.S. 53, 62, 77 S.Ct. 628.
*879 Other factors which are considered relevant in determining whether disclosure is required are set forth in an annotation on the subject in 76 A.L.R.2d at page 262. Some of the factors are whether it was necessary for the prosecution to refer to the informer in the presentation of the case, or whether the informer's existence was first brought out on cross-examination by the defendant; whether the informer was an "active participant" in the offense with which the defendant is charged or is a "mere informer" who supplies a "lead"; whether the accused admits or does not deny guilt; and whether there is independent evidence of the accused's guilt. The foregoing factors are only some of those considered in determining whether the privilege is applicable and is not intended to be all inclusive.
The State relies on the case of State v. Hardy, supra, to support the action of the trial court. In that case the First District Court affirmed a conviction for the unlawful possession of moonshine whiskey. The court distinguished it from the Roviaro case on the grounds that the defendant was being prosecuted for the unlawful "possession" of moonshine and not for the unlawful sale, and that the informer was not an active participant in the crime charged, as was the case in Roviaro. The court in the Hardy case did not set out the facts in detail, and at the outset of the opinion found that the evidence was "sufficient to support the verdict." As best can be determined from the opinion in the Hardy case, a search was made of the defendant's "dwelling house" and five gallons of moonshine whiskey were found therein. Apparently the warrant was issued pursuant to an affidavit which referred to the fact that a "black male" had made a "buy" on the premises. The defendant denied making any sale. We agree with the holding of the Hardy case under the facts outlined in the opinion, but are of the view that the instant case is distinguishable from it. This case, like the Hardy case involves the unlawful possession of contraband rather than the sale, and in this respect are similar to one another. So, too, in both cases, the informant was not an "active participant" in the crime charged. In the Hardy case, however, there is nothing to indicate that the defendant did not have "exclusive" control of the dwelling house or that there were other people who had equal access thereto. In the case sub judice the defendant and the State's witness, Constance Doles, each had access to the room where the narcotics were found. As was stated above, the finding of contraband on the defendant's property of which he has "exclusive" control is sufficient to support a conviction for the unlawful possession thereof, but the mere finding of it on the property which several people have equal access to will not support such a conviction. It is this fact which commands a different result from that reached in the Hardy case. Guevara v. United States, supra; People v. Antista, supra; and Evans v. United States, supra.
Not having found the answer to the question before us among the reported Florida decisions, we feel free to look to those from other jurisdictions, both state and federal.
In the recent case of Rugendorf v. United States, supra, the defendant was convicted for knowingly receiving, concealing and storing goods which had been transported in interstate commerce. The only proof implicating the defendant was the discovery of the stolen goods in his basement. It seems that four other people, one of whom had a criminal record for trafficking in stolen goods, had keys to the defendant's house while he and his wife were on vacation some three weeks prior to the search and seizure. The affidavit which supported the search warrant revealed that a "confidential informant" had been in the basement and had seen the stolen goods. The United States Supreme Court, in a five to four decision, held that the issue of disclosure was not properly raised in the lower court, and refused to consider the question on its merits. Justice Douglas, writing for the minority, was of the view that the issue was raised, and that under the circumstances, *880 disclosure was required to aid the defendant in establishing his defense that the stolen merchandise was placed there without his knowledge or consent.
We are fully aware that the Roviaro case on its facts is distinguishable from the instant case. However, we are equally aware that the Supreme Court was attempting to enunciate guidelines to be utilized by the state courts and lower federal courts in reaching a conclusion under various circumstances. Similarly, the Rugendorf case is also distinguishable and does not conclusively decide the question here presented. To hold that Roviaro and Rugendorf do not indicate disclosure is required under these circumstances would be to give an unduly narrow construction and interpretation of those cases and to ignore the obvious import thereof. We are not, however, relying exclusively on those cases.
In People v. Durazo, 1959, 52 Cal.2d 354, 340 P.2d 594, 76 A.L.R.2d 257, the defendant was charged under a three count indictment with the unlawful selling of heroin on three different occasions. The informer in the Durazo case was only present at the first sale with the officer. At the second and third transaction, the officer was alone. The officer was the only witness for the prosecution. The defendant testified in his own behalf and claimed he was the victim of mistaken identification. On appeal the California Supreme Court held that the trial court committed reversible error and reversed the conviction on the grounds that the informer was a material witness on the issue of guilt on all three counts because if he had contradicted the officer's identification of the defendant with respect to the first sale, his testimony would have been "highly significant to discredit the identification" with respect to the second and third sale. The informer in the Durazo case was not an "active participant" to the second and third sale, but only to the first, and the Durazo case was not within the Roviaro factual situation.
In the instant case, the only proof that the defendant had "possession" of the contraband was the testimony of Doles to the effect that it was not hers and that she knew nothing about it, and the defendant's inferred knowledge of the presence of the drugs. If the informant had testified that the "female" who sold him the marijuana was in fact the State's witness, it would have materially affected the credibility of her testimony. Furthermore, it would have shown the possession of the narcotics to be in the State's witness rather than the defendant, since there was no attempt to establish joint possession. Additionally, it was Doles' testimony which proved that the defendant had knowledge of the presence of the narcotics. Without knowledge, there can be no valid conviction. 91 A.L.R.2d 810. The annotation states that Florida does not require knowledge to support a conviction and cites as authority the case of Broic v. State, Fla. 1955, 79 So.2d 775. A close reading of that case reveals that the Supreme Court was of the opinion that under the circumstances the defendant could not claim lack of knowledge. The marijuana cigarette was in his coat pocket for a full day prior to his arrest. In the opinion the court stated, "it seems he had sufficient control of his faculties at least to be conscious of the contents of his pockets." Broic v. State, supra, 79 So.2d at p. 776. We do not think the Florida Supreme Court would consider unknowing possession to be in violation of § 398.03. Furthermore, this construction brings the Broic case in harmony with the Reynolds case, supra. In the Reynolds case the Florida Supreme Court held that unlawful "possession" of intoxicating liquor required "conscious and substantial possession by the accused * *" Reynolds v. State, supra, 111 So. at p. 286. Under the circumstances we are of the opinion that the informer was a "material witness" on the issue of the defendant's guilt or innocence, and that disclosure is required.
The defendant's need for the informant's name is greater in the instant case than in *881 either the Rugendorf case or the Durazo case. In the Rugendorf case the defendant knew who had keys to his home, and could have called them to the stand, but did not do so. Also, the quantity of goods was such that it is questionable whether he could deny knowledge. In Durazo the witness whose credibility was involved was that of a disinterested police officer. In the instant case, the credibility of the State's witness is suspect to begin with because of her relationship to the defendant and her access to the premises.
On the authority of the Durazo case, fortified by the general pronouncements of the United States Supreme Court in Roviaro and the dissenting opinion in Rugendorf, we hold that disclosure of the informant's identity is required. While there are relatively few cases which have required disclosure, "it is difficult to imagine a clearer case than the present one for application of that exception * * * Unless we allow that amount of leeway, we can only rest uneasy in the thought that we are helping send an innocent [wo]man to prison." Rugendorf v. United States, supra, 376 U.S. at p. 541, 84 S.Ct. at p. 832.
In reaching this result, we wish to point out that the testimony of the witness whose credibility is being questioned is not cumulative but is decisive to a lawful conviction. Had it been merely cumulative, or had there been other circumstantial evidence tending to show guilt, we would be inclined to reach a different result. Additionally, there was no showing that the defendant and the State's witness were engaged in a joint enterprise or were in joint possession of the narcotics, as was the case in Bourg v. United States, supra. Lastly, had the defendant's control of the premises been "exclusive," the judgment would have been affirmed as was the case in State v. Hardy, supra.
In conclusion, we should like to state that we are not unmindful of the ever increasing burden on law enforcement agencies in their continuing endeavor to stamp out the illicit and vicious narcotic traffic. See dissenting opinion in People v. Durazo, supra, and United States v. Hernandez, 2 Cir.1961, 290 F.2d 86, Appendix A. This court, like the courts of other states and the federal courts, does not want to frustrate their efforts, for we are equally concerned with the problem. The destructive effect of narcotics on our human resources, especially the youth of this country, is immeasurable and the narcotic "pusher" is as much a threat to our society, if not more so, than any other enemy.
The authorities must be allowed a reasonable rein in order to adequately protect the public interest. To be sure, this is the very reason that the state and federal courts have recognized the privilege of non-disclosure in such cases and why they have not given the word "possession," as that term is employed in the Uniform Narcotic Drug Act, an unduly narrow construction, even though it is a penal statute. Under the particular circumstances of the case before us we cannot be indifferent to the resulting denial of the defendant's rights, however praiseworthy the State's motives are in protecting its confidential informer. Such motives and purposes cannot prevail when, as here, they will deprive the defendant of her only opportunity to prove her innocence.
As has been pointed out, the basic issue lies in a balancing of the public's interest against that of the individual's. Just where that balance lies is not susceptible of articulation or definition, nor can it be settled by general or abstract principles, but will, of necessity, depend on the facts and circumstances of the particular case. No doubt, as in most cases which are largely a matter of degree, there will be disagreement among reasonable men in particular cases. We are of the view that when such is the case, the issue must be resolved in favor of the individual.
*882 Accordingly, the judgment is reversed and remanded for further proceedings consistent with the views expressed herein.
Reversed.
SMITH, Acting C.J., and WILLSON, JESSE H., Associate Judge, Concur.