428 So.2d 695 (1983)
STATE of Florida, Petitioner,
v.
Luis Antonio MONTALVO, Respondent.
No. 82-2430.
District Court of Appeal of Florida, Second District.
February 9, 1983.
Rehearing Denied March 25, 1983.
*696 E.J. Salcines, State Atty., and Daniel J. Fernandez, Asst. State Atty., Tampa, for petitioner.
Arthur N. Eggers, Tampa, for respondent.
BOARDMAN, Acting Chief Judge.
The state petitions for writ of certiorari to review the trial court's order requiring it to disclose the identity of a confidential informant (CI). We grant the petition and quash the order to disclose.
Following the filing of charges of violation of the Florida Comprehensive Drug Abuse Prevention & Control Act, Chapter 893, Florida Statutes (1981), against him, respondent Luis Antonio Montalvo filed an unsworn motion for disclosure of the identity of the CI "participating in the investigation of this cause" on the grounds that the CI had made the arrangements for Detective Rodriguez, the arresting officer, to purchase the controlled drugs involved in the transaction and had introduced Rodriguez to codefendant David Mitchell, although consummation of the transaction occurred out of the CI's presence. The trial court granted this motion.
When the state notified defense counsel that it intended to seek appellate review, defense counsel, concerned that his original motion "may have been technically deficient," filed an amended motion for disclosure adding the following pertinent allegations:
2. The informant's testimony is material to the defense as to the following:
a. The informant can provide information as to whether Mr. Montalvo's name was ever mentioned during the negotiations with Mitchell and thus support his denial of participation.
b. The informant may be able to provide testimony as to statements by Mr. Mitchell as to his alleged source of contraband being other than Mr. Montalvo.
c. The informant may be able to provide information as to the existence or nonexistence of the telephone conversation by Mitchell with "Luis" [described by Rodriguez] and thus corroborate the Defendant's denial of the existence of any call between the two.
d. The informant may be able to corroborate the fact that Mr. Montalvo did not enter the bar [where the transaction occurred] and negate Rodriguez's testimony that he did.
e. The informant's testimony in (d) above may corroborate Mr. Montalvo's allegations that he was not in the driver's seat of the suspect vehicle when arrested and was thus also misidentified by Rodriguez as being both the man in the bar and the driver of the auto.
f. The informant may be able to provide information as to events in the parking lot though Rodriguez states he was not present.
3. All the factors noted in (2) above are relevant to the Defendant's position that he had no foreknowledge of any trafficking offense, did not participate in any events leading to such an offense, was not in the bar in question, has been misidentified as a participant in this offense and is the subject of a faulty observation by Detective Rodriguez as to the transfer of some object in a darkened car.
This motion was sworn to by defense counsel rather than by respondent himself.
Rodriguez' testimony on deposition was that on October 19, 1981, he received a telephone call from a CI advising him that Mitchell was interested in selling him 400 quaaludes for $600 in cash. The CI was to receive 100 of the quaaludes for his/her services. The CI wanted Rodriguez to meet him/her and Mitchell at Mike's Lounge as soon as possible.
Rodriguez went to the lounge, met the CI, and was introduced to Mitchell. The CI then left Rodriguez' and Mitchell's presence. Mitchell told Rodriguez that he was waiting for a telephone call from a Latin male named Luis. A few moments later, the telephone rang and Mitchell answered. Mitchell said, "Yes Luis I am waiting for you. I need 400 for some people I have here." After conversing a few more minutes, *697 Mitchell hung up and asked Rodriguez to accompany him into the restroom so he could count Rodriguez' money. In the restroom, Rodriguez showed Mitchell the money, and they then left the restroom. A few minutes later, respondent came up and engaged in a brief conversation with Mitchell which Rodriguez did not overhear. Respondent then left the lounge. A few moments later, Mitchell and Rodriguez left the lounge. Mitchell walked over to a car occupied by respondent and one Portugese. Before Mitchell reached the car, Rodriguez saw respondent, the driver, hand Portugese a plastic package. When Mitchell reached the car, Portugese, the passenger, handed him something. Mitchell stuck it in his crotch, walked back over to Rodriguez, and got in the back seat of Rodriguez' car. Mitchell then took the quaaludes out of his crotch, and Rodriguez' partner arrested him. Respondent and Portugese were arrested immediately thereafter.
At the hearing on the amended motion, Rodriguez' deposition was before the trial court. Respondent presented no evidence, documentary or otherwise, but defense counsel represented that he had interviewed Mitchell, who had pled guilty to trafficking, the day before, and that Mitchell told him the following: Mitchell believed that a certain barmaid at the lounge was the CI. The negotiations took place at the bar before Rodriguez arrived. At that time, Mitchell removed a package from his crotch, displayed the contraband to the barmaid, then put it back in his pants. Mitchell had 1000 pills, but hid 600 of them in the bathroom under a trash can. He had the remaining 400 pills on his person before Rodriguez ever arrived.
At the conclusion of the hearing, the trial court granted the amended motion, and the instant petition for certiorari followed timely.
Florida Rule of Criminal Procedure 3.220(c)(2) provides: "Disclosure of a confidential informant shall not be required unless the confidential informant is to be produced at a hearing or trial, or a failure to disclose his identity will infringe the constitutional rights of the accused."
As this court stated in Spataro v. State, 179 So.2d 873 (Fla. 2d DCA 1965):
As to the question when the privilege of non-disclosure applies and when an exception should be made and disclosure required, no "fixed rule * * * is justifiable." Roviaro v. United States, [353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957)]. As the Supreme Court stated in Roviaro:

"The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders non-disclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." (Emphasis supplied) 353 U.S. 53, 62, 77 S.Ct. 628.
Other factors which are considered relevant in determining whether disclosure is required are set forth in an annotation on the subject in 76 A.L.R.2d at page 262. Some of the factors are whether it was necessary for the prosecution to refer to the informer in the presentation of the case, or whether the informer's existence was first brought out on cross-examination by the defendant; whether the informer was an "active participant" in the offense with which the defendant is charged or is a "mere informer" who supplies a "lead"; whether the accused admits or does not deny guilt; and whether there is independent evidence of the accused's guilt.
Id. at 878-879, quoted with approval in Treverrow v. State, 194 So.2d 250, 252 (Fla. 1967).
Here the state established that the CI would not be produced or mentioned at respondent's trial, was not present during the consummation of the transaction, and had no contact whatsoever with respondent.
The state further established through Rodriguez' uncontroverted testimony that the CI was not present during Mitchell's telephone *698 conversation with "Luis," which refutes one of respondent's allegations concerning the materiality of the CI's testimony. Another allegation, that the CI could testify as to whether respondent's name was mentioned during the CI's negotiations with Mitchell, while true, does not establish materiality, since the mere fact that respondent was not mentioned during the negotiations between Mitchell and the CI (if that be the case) would not establish respondent's nonparticipation in the transaction. The remaining allegations of materiality are sheer speculation unsupported by anything in the evidence before the trial court. The defendant must establish that the identity of the CI is material to the issues to be presented at trial, see Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); McCants v. State, 363 So.2d 362 (Fla. 1st DCA 1978), cert. denied, 372 So.2d 469 (Fla. 1979); the burden is on the defendant. Treverrow. McCants notes:
The test for "materiality" of evidence required to be disclosed by the State in a criminal case is stated by the United States Supreme Court in U.S. v. Agurs, 427 U.S. 97 at 109, 112-113, 96 S.Ct. 2392 at 2400, 2401-02, 49 L.Ed.2d 342 (1976):
"The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish `materiality' in the constitutional sense.
... ."
363 So.2d at 364-365. (Emphasis added.)
At best, respondent established before the trial court only a mere possibility that disclosure of the CI's identity might aid in his defense, and this was insufficient to support the trial court's disclosure order.
We are constrained to note that respondent appended to his response to the petition for certiorari filed with this court a purported transcript of a purportedly sworn statement taken from Mitchell by defense counsel in his capacity as a notary public, which statement was not before the trial court and was not even taken until after the instant certiorari petition had been filed in this court. Moreover, there is no indication that the prosecutor or anyone acting on his behalf was present at the taking of this statement. Defense counsel indicates in his response that this "[s]worn testimony received from David Mitchell by counsel for Respondent" was "brought before the Trial Court through statements of counsel." While counsel may well have interviewed Mitchell prior to the hearing below, and while the purported sworn statement substantiates counsel's representations at the hearing, counsel's statement to this court is nevertheless misleading, to say the least, inasmuch as there is no documentation of any sort before this court that Mitchell had made a sworn statement of any nature at or before the hearing below. Moreover, defense counsel knows or should know that he is not entitled to rely in this court on any unauthenticated evidentiary material not before the trial court absent opposing counsel's acquiescence in such reliance, which acquiescence was neither sought nor offered here. Such tactics will not be tolerated by this court.
We have, however, reviewed Mitchell's purported statement to determine whether, if such testimony were before the trial court, it would establish respondent's entitlement to disclosure of the CI's identity. If so, respondent might be allowed on remand to present competent evidence which would justify a requirement of disclosure. However, we conclude that Mitchell's statement provides no additional support for any of respondent's allegations and that, under the circumstances, respondent is not entitled to any further hearing on this issue.
Accordingly, we grant the writ of certiorari, quash the trial court's order compelling disclosure of the CI's identity, and remand for further proceedings consistent with this opinion.
GRIMES and DANAHY, JJ., concur.