507 So.2d 1217 (1987)
Virgie Mae COCKETT, Appellant,
v.
STATE of Florida, Appellee.
No. 85-2467.
District Court of Appeal of Florida, Fourth District.
June 3, 1987.
Richard L. Jorandby, Public Defender, and Ellen Morris, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Jr., Atty. Gen., Tallahassee, and Amy Lynn Diem, Asst. Atty. Gen., West Palm Beach, for appellee.
HERSEY, Chief Judge.
Virgie Mae Cockett appeals a conviction of trafficking in cocaine. The evidence that she aided and abetted Hattie Mae Butler in the commission of this offense was entirely circumstantial. The issue is whether the evidence was sufficient to sustain the conviction. "There are two essential conditions which must be met to result in the status of aider and abetter. Such a person is one who has the intent that the crime be committed and who, by acts or words, assists or encourages another in the actual commission of the crime." Davis v. State, 436 So.2d 196, 198 (Fla. 4th DCA 1983), rev. denied, 444 So.2d 418 (Fla. 1984), quoting from Chaudoin v. State, 362 So.2d 398, 401 (Fla. 2d DCA 1978) (emphasis added). "Intent may be, and in fact usually is, shown largely by circumstantial evidence but if the proof of intent rests solely upon circumstantial evidence (as it does here) the proof must be not only consistent with the guilt of the accused, but also inconsistent with any other reasonable hypothesis." Id., 436 So.2d at 199, quoting from Lockett v. State, 262 So.2d 253, 254 (Fla. 4th DCA 1972).
In Davis, the defendant was one of four youths who entered a store then left after ostensibly shopping. Minutes later, two of the four youths (neither of whom was the defendant) returned to the store with weapons and robbed it. The defendant and one of the youths who was in the store at the time of the robbery were later arrested when the car they were in, which the defendant *1218 was driving, was stopped by police. A weapon and stolen clothing were found under the front passenger seat. The defendant told police that he was unaware that any robbery was going to take place, that he didn't see the money taken, was unaware of any guns in the car, and had gone into the store for the purpose of buying jeans. This court found that the defendant's motion for directed verdict should have been granted. Id., 436 So.2d at 198.
In Fowler v. State, 492 So.2d 1344, 1347-48 (Fla. 1st DCA 1986), rev. denied, 503 So.2d 328 (Fla. 1987), the court stated, with regard to the standard of review on circumstantial evidence cases:
Initially, we must consider whether, in order to be legally sufficient, the circumstantial evidence relied on by the state, must lead only to an inference or conclusion that contradicts defendant's hypothesis of innocence, or whether it may be susceptible of two or more inferences, one being consistent with defendant's story and others being inconsistent with such story. We conclude that a circumstantial evidence case should not be submitted to the jury unless the record contains competent, substantial evidence which is susceptible of only one inference and this inference is clearly inconsistent with the defendant's hypothesis of innocence. Evidence that leaves room for two or more inferences of fact, at least one of which is consistent with the defendant's hypothesis of innocence, is not legally sufficient to make a case for the jury.
(Footnotes omitted.)
In the present case, proof of appellant's intent that the crime be committed rests solely on circumstantial evidence. Therefore, under Davis and Fowler, the proof must be consistent with guilt and inconsistent with any other reasonable hypothesis (of innocence), e.g. appellant's own story. If the evidence is susceptible of two or more inferences, one consistent with her story and one consistent with the state's theory, then the case should not have been submitted to the jury. Fowler, 492 So.2d at 1348.
Appellant's codefendant, Hattie Mae Butler, was introduced by a confidential informant to undercover detective Dansell Brooks. Officer Brooks testified that during their first meeting, he and Butler discussed her selling him three ounces of cocaine at a later date, and that she supplied him at that time with a one-half-gram "sample" of cocaine for $60. Officer Brooks thereafter telephoned her from the police station and arranged to exchange $4,100 for three ounces of cocaine. That transaction fell through, however, but after subsequent telephone conversations they arranged to meet at a Denny's parking lot, where they would exchange $2,800 for two ounces of cocaine.
At the appointed time, Butler pulled up in her car next to Brooks' undercover police car. Appellant was a passenger in Butler's car and undercover officer Evelyn Heath was a passenger in Brooks' car. When Butler pulled up, she told Brooks that her car was running hot so she was going to an adjacent Shell station. Brooks offered to ride to the Shell station with her, and climbed into the backseat.
At the Shell station, Butler introduced Brooks to appellant. Butler then asked Brooks if he was a cop, and he replied that if she didn't trust him he'd just get out of the car. Appellant then said that she wanted to make a phone call and got out of the car. Brooks told Butler he'd be at his car at Denny's when she was ready for the cocaine transaction, and he also exited the car. Butler, who was still seated in the car, then handed appellant, who was outside the car, a towel and told appellant to go over and "take care of everything." Appellant took about four steps with the towel then abruptly turned and returned to the vehicle.
Officer Brooks testified that appellant then asked Butler why she had to do it alone. Tapes of the conversations at the scene recorded on a unitel device (body bug) worn by Brooks, indicated that appellant said, "Why can't you do that? Why? (inaudible) Why don't you do it." At any *1219 rate, Butler then took the towel back from appellant and told Brooks to go to her car and wait for her. (There was no evidence as to what, if anything, was wrapped in the towel, and the towel was not recovered.) Brooks testified that after Butler took the towel back, she told appellant to "at least go over there and see the money."
Officer Brooks stated that appellant then attempted to make a phone call, after which she walked with him back to his car. During the walk, appellant talked about being hungry and asked Brooks if he knew of a good place for bar-b-que ribs. Also during the walk, Brooks told appellant she could see the money, but she responded that she wanted to call her husband, then talked again about bar-b-que ribs. Butler drove up later and got out, and she and appellant approached Brooks' car and he showed them $2,800. Brooks stated that when they saw the money, both appellant and Butler nodded their heads.
Butler then got in the car with officer Heath, reached into her skirt and pulled out a brown paper bag containing approximately two ounces (57.7 grams) of cocaine, and gave it to Heath. While the cocaine transaction was taking place, appellant was walking around the parking lot, waiting to use a phone again. After the exchange was made, surveillance units moved in and arrested Butler and appellant.
Appellant testified that she had known Butler three to four years and had been renting a room from her for about two weeks when the incident occurred. She stated that on the day of the incident she was getting ready to go somewhere when Butler asked her to go for a ride with her to see someone named A.J. (Brooks' undercover name). She stated that she heard Butler ask Brooks if he was a cop, but she wasn't really paying much attention. She didn't want to hear too much, though, so she got out of the car. When Butler handed her the towel she figured something involving drugs was going on but she didn't want to get involved, so she gave the towel back.
Appellant stated that she was trying to telephone her husband, from whom she was separated, but couldn't reach him on the first attempt, and couldn't find a vacant phone booth thereafter. She testified that she wasn't sure whether she knew for a fact that a drug deal was going on. She saw the brown paper bag in Butler's car but didn't know for sure what was in it. She saw the money but didn't pay much attention because it didn't concern her; and after she saw the money she left to try to use a phone. Appellant also stated that she had no previous involvement with drugs and didn't know Butler was involved with cocaine.
Butler testified that she had previously used cocaine and had been convicted for possession of less than one-half gram of cocaine. When asked, "Isn't it a fact that Virgie Mae Cockett attempted to obtain some of the cocaine for you to deliver to Danzelle [sic]?" she replied, "Not that I recall." When asked, "Do you recall whether or not Virgie Mae Cockett attempted to get some of the cocaine that you were trying to get for Detective Brooks?" she replied, "I don't know."
Detective Heath testified that she never spoke with appellant at all.
The jury, after deliberations, returned a verdict of guilty. Appellant's motions for directed verdict of acquittal at the close of the state's case, at the close of all of the evidence and post-trial, were denied. Appellant argued that the state had failed to show that she had intended to participate in the crime. The court, although noting that it was a very, very close case, stated that "[b]eing present and participating in the showing of the money is an integral part of the transaction and is more than just being a bystander."
The question is whether the circumstantial evidence was sufficient on the element of intent to take the case to the jury.
The fact that appellant was a passenger in Butler's car supports an inference that appellant was there to help Butler with the drug deal. But it could also be inferred that appellant was merely along for the ride. From the towel incident, including appellant's alleged query of Butler as to *1220 why she had to do it alone, an inference could arise that appellant wanted the drug deal to occur but didn't want to do it by herself. It could also support an inference, however, that she didn't want to be involved at all and was saying to Butler whatever was necessary in order to avoid having to participate; or that she initially intended to participate but changed her mind once she had the towel in her hand.
From the fact that appellant observed the money and nodded her head, it could be inferred that she approved of and encouraged the transaction. But it would also be permissible to infer that she observed the money out of curiosity or only because she happened to be standing where she could see it; and that she nodded her head simply as an acknowledgment that the money existed, or perhaps because she saw Butler nodding her head.
The fact that appellant was walking around the parking lot while the exchange of drugs for money took place, tends to support an inference that she was acting as a "look-out." It could also be inferred, however, that she was, as she testified, simply waiting for a free telephone so she could make a call.
There are no disputed issues of fact in this case; there are simply opposing interpretations of those facts. Our review of the record leads us to agree with appellant that there was no circumstantial (or direct) evidence which was necessarily inconsistent with her contention that she was merely along for the ride, and that although she was aware that a drug transaction was going on, she didn't want to and tried not to be, involved in that transaction.
Under Davis and Fowler, therefore, we conclude that the present case should not have gone to the jury.
In Heiney v. State, 447 So.2d 210 (Fla.), cert. denied, 469 U.S. 920, 105 S.Ct. 303, 83 L.Ed.2d 237 (1984), and in Rose v. State, 425 So.2d 521 (Fla.), cert. denied, 461 U.S. 909, 103 S.Ct. 1883, 76 L.Ed.2d 812 (1983), the Supreme Court of Florida stated that whether evidence fails to exclude all reasonable hypotheses of innocence is for the jury to determine, and that judgments based upon jury verdicts should not be reversed where there is substantial competent evidence to support the jury verdict. However, as explained in Judge Zehmer's excellent exposition of the apparent but not real contradictions in these cases, the supreme court, in Rose and Heiney,
is merely recognizing the jury's right to determine whether the state has disproved the defendant's hypothesis of innocence in those cases where there is evidence presented by the state that contradicts the defendant's story. In such cases it becomes the jury's duty, as finders of fact, to determine what evidence is credible and whether the credible circumstantial evidence that is "inconsistent with the defendant's hypothesis of innocence" is sufficient to "exclude" every reasonable hypothesis of innocence beyond a reasonable doubt.
Fowler v. State, 492 So.2d at 1344, 1347 (emphasis added).
The state presented no evidence that was susceptible only of an inference that appellant was guilty as charged.
Accordingly, we reverse and remand with instructions to discharge appellant.
DELL, J., concurs.
LETTS, J., dissents without opinion.