609 So.2d 112 (1992)
Karen GARTRELL, Appellant,
v.
STATE of Florida, Appellee.
No. 91-0545.
District Court of Appeal of Florida, Fourth District.
November 25, 1992.
*113 Richard L. Jorandby, Public Defender, and Ellen Morris, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Douglas J. Glaid, Asst. Atty. Gen., West Palm Beach, for appellee.
LETTS, Judge.
The defendant was charged with violating section 893.135(1)(b)1.a, Florida Statutes (1989), which states in part that the crime of trafficking in cocaine is committed by "any person who is knowingly in actual or constructive possession of 28 grams or more of cocaine... ." (Emphasis added.) The defendant moved for a judgment of acquittal on the ground that the state failed to present any evidence on the knowledge element and the trial court denied the motion. From that denial, the defendant now appeals. We affirm.
The defendant was a passenger in a vehicle stopped pursuant to a traffic violation. The defendant was sleeping in the back-seat and there was a driver and passenger in the front seat. The cocaine was found in the defendant's handbag which the officer testified she was using as a pillow when first observed.
The foregoing statute requires the defendant to be knowingly in actual or constructive possession. Ignoring the statutory term "knowingly" for a moment, this court *114 has consistently defined actual possession as follows: "actual possession exists where the accused has physical possession of the controlled substance and knowledge of such physical possession." Brooks v. State, 501 So.2d 176, 177 (Fla. 4th DCA 1987); (citing Willis v. State, 320 So.2d 823, 824 (Fla. 4th DCA 1975)).
Constructive possession, on the other hand:
exists where the accused without physical possession of the controlled substance knows of its presence on or about his premises and has the ability to maintain control over said controlled substance. To establish constructive possession, the state must show that the accused had dominion and control over the contraband, knew the contraband was within his presence, and knew of the illicit nature of the contraband.
Brown v. State, 428 So.2d 250, 252 (Fla. 1983), cert. denied, 463 U.S. 1209, 103 S.Ct. 3541, 77 L.Ed.2d 1391 (1983) (citations omitted). The preceding definitions show that knowledge of the contraband's presence is an element of possession itself. Logic dictates, then, that the statutory term "knowingly" cannot mean the same thing; i.e., knowledge of the contraband's presence. Instead, "knowingly" as used in the statute has been interpreted by our supreme court to mean that the defendant must know the nature of the particular substance he possesses. State v. Dominquez, 509 So.2d 917 (Fla. 1987). See also Wag v. State, 475 So.2d 239 (Fla. 1985). Therefore, not knowing that the substance one possesses is cocaine is a defense under the statute. The defendant in this case did not raise that argument, but instead, contended that she was not aware of the cocaine's presence in her handbag. Consequently, the state's case centered on proving possession and the knowledge inherent therein.
The state correctly characterizes this as an actual rather than a constructive possession case. It is uncontroverted that the defendant was in physical possession of the cocaine (the cocaine was found in her handbag which she was using as a head pillow). The second element of actual possession is knowledge of the physical possession. This court has repeatedly stated that knowledge, for either actual or constructive possession, may be inferred from the accused's exclusive possession and control.[1]Willis, 320 So.2d at 825. The Florida Standard Jury Instruction on the trafficking statute is in accord, "[i]f a person has exclusive possession of a thing, knowledge of its presence may be inferred or assumed."
The presumption of knowledge is only available if the state proves exclusive possession. Black's Law Dictionary, 506 (5th ed. 1979), defines exclusive as "vested in one person alone." The handbag in this case was found in appellant's sole possession, under her head, being used as a pillow. Therefore, she was in exclusive possession of the bag from which we can presume her knowledge of the cocaine's presence. The dissent disagrees, viewing this as a "joint possession" case because of the defendant's bare assertion that she was not in exclusive possession of the bag shortly before the car was stopped. The defendant contends that her bag was on the armrest, where others had access to it, while she slept, and that shortly before the car was stopped, she was awakened and told to remove her bag. She does not deny that when the car was stopped, the handbag was in her sole possession. Contrary to the dissent's belief, the defendant's self-serving assertion, alone, cannot turn this into a joint possession case. Instead, as the First District noted in Frank v. State, 199 So.2d 117 (Fla. 1st DCA 1967), it is evidence designed to rebut the knowledge inference and created, at most, a jury question as to whether the defendant was in exclusive possession of the handbag. See Frank at 121 (the inference of knowledge is rebuttable and not conclusive).
*115 A Third District case, Wilcox v. State, 522 So.2d 1062 (Fla. 3d DCA 1988), illustrates the point. In that case, the defendant was charged with unlawful possession of a firearm by a convicted felon. The evidence showed that when the defendant was approached by the police, he was sitting on a bench in a train station with his girlfriend. A canvas tote bag was sitting on the bench in between them. When the officers advised the defendant he was under arrest (no mention of why), he immediately grabbed the tote bag and ran. The firearm was found in the bag. At trial, the defendant argued that he was entitled to a judgment of acquittal because the state had failed to prove possession. Specifically, he raised the same argument the defendant has here, that since his girlfriend had complete and independent access to the tote bag, it was in their joint possession and therefore his knowledge for actual or constructive possession could not be inferred, but instead had to be proved by independent evidence. The defendant in Wilcox even had something in his favor not present sub judice, that is, his girlfriend corroborated the story, testifying that she had equal access to the bag and had in fact placed the gun in the tote bag without his knowledge.
Nonetheless, the Third District held that the issue of whether the defendant was in exclusive possession of the tote bag was a question for the jury, reasoning:
Although both [the defendant] and his girlfriend testified that they had equal access to use of the tote bag, the evidence shows that it belonged to [the defendant]. [The defendant's] girlfriend claims she did not advise [the defendant] that she had placed the gun in the bag and he claims that he was not aware that it was there. However, when the police officers approached him, he immediately grabbed the bag. Viewing this evidence in the light most favorable to the state, the trier of fact might disbelieve the testimony of the defendant and his girlfriend and conclude that [the defendant] had exclusive possession of the bag and knew about the weapon's existence. Thus, the trial court correctly denied the motions for judgment of acquittal.
522 So.2d at 1064.
Wilcox is applicable to the instant case. Here, the officer observed the defendant in exclusive possession of the bag. Contrary to that observation, the defendant contends that she was not in exclusive possession of the bag shortly before the car was stopped. However, unlike Wilcox, there was no testimony in this case from the other passengers corroborating the defendant's assertion. The defendant's self-serving assertion, cannot, ipso facto, turn this into a joint possession case. Instead, at most, it created a jury question as to whether the defendant was in exclusive possession of the handbag.
The dissent argues that Wilcox is inapplicable here because "the grabbing [of the tote bag by the defendant] and the running away supplied the extra requirement of guilty knowledge." Again, this evince's the dissent's different interpretation of the law applicable to this case. The dissent views this as a joint possession case because of the defendant's bare assertion that others had access to the bag. As already noted, if this were a joint possession case the requisite knowledge for possession could not be inferred but would have to be established by independent proof. That independent proof will almost always consist of circumstantial evidence from which the jury can infer the requisite knowledge.
We, likewise, find no merit in the defendant's contention that her constitutional right against double jeopardy was violated when she was resentenced to nine years imprisonment.
Briefly, the defendant was initially sentenced, by a judge who was filling in for the vacationing trial judge, to one year imprisonment on the simple possession count and a three year mandatory minimum on the trafficking possession count, to run concurrently. This constituted a downward departure from the defendant's permitted guidelines range of four and one-half to nine years. However, the trial judge did not provide any written reasons *116 for the departure. Nine days later, the state filed a motion to correct an illegal sentence, pursuant to Florida Rule of Criminal Procedure 3.800(a), arguing that the downward departure without written reasons constituted an illegal sentence.
The motion was heard before the original judge who had presided at trial. He found that the initial sentence was "void ab initio" and resentenced the defendant to nine years imprisonment. The increase of a legal sentence upon resentencing constitutes double jeopardy. Macias v. State, 572 So.2d 22 (Fla. 4th DCA 1990). See also Fla.R.Crim.P. 3.800(b) (revision of a legal sentence allowed but only insofar as it reduces the sentence). However, there is no similar prohibition against the increase of an illegal sentence. Florida Rule of Criminal Procedure 3.800(a) permits a court to correct an illegal sentence at any time. The sole argument on this resentencing issue then is whether a departure sentence, without written reasons, constitutes an illegal sentence.
As the dissent points out, neither rule 3.800(a), nor the case law defines what constitutes an illegal sentence. Black's Law Dictionary 673 (5th ed. 1979), defines illegal as "[a]gainst or not authorized by law." A downward departure from sentencing guidelines without valid written reasons violates section 921.001(6), Florida Statutes (1991), which states, "[t]he sentencing guidelines shall provide that any sentences imposed outside the range recommended by the guidelines be explained in writing by the trial court judge", and is therefore illegal. This court has held that a downward departure sentence without written reasons is reversible error. State v. Joseph, 543 So.2d 405 (Fla. 4th DCA 1989). It has also implicitly recognized that such sentences are illegal. See Edwards v. State, 576 So.2d 441, 442 (Fla. 4th DCA 1991) ("[i]f the 50 year [sentence] is considered a departure sentence, it is also illegal because no clear and convincing reason for departure supports it"); Cooper v. State, 573 So.2d 74-75 (Fla. 4th DCA 1990), (trial court reversibly erred in imposing sentence outside guidelines without providing written reasons for departure and in subsequently denying defendant's motion to correct illegal sentence); Jano v. State, 559 So.2d 1270, 1271 (Fla. 4th DCA 1990) ("the imposed sentence of straight probation departed from the sentencing guidelines and the trial judge gave no written reasons for the downward departure ... [a]ccordingly, we reverse appellant's illegal sentence"); Lewis v. State, 532 So.2d 1340, 1341 (Fla. 4th DCA 1988) (sentencing was illegal because of the absence of written reasons for departure).
The dissent does not agree that such sentences are illegal, pointing to sections 924.06 and 924.07, Florida Statutes (1991), and rule 9.140(c)(1)(J), Florida Rules of Appellate Procedure, as authority. Those statutes and the rule delineate the types of sentences, orders and judgments from which the state and a defendant can appeal. An appeal from an illegal sentence is listed separately from an appeal of a sentence imposed outside the guidelines range. Based solely on that, the dissent concludes that the legislature did not intend departure sentences to constitute illegal sentences and consequently did not intend for rule 3.800(a) to provide an avenue of relief in this case.
We find the dissent's construction of rule 3.800(a) unpersuasive. "One of the most fundamental tenets of statutory construction requires that we give statutory language its plain and ordinary meaning, unless the words are defined in the statute or by the clear intent of the legislature." Green v. State, 604 So.2d 471 (Fla. 1992). "If necessary, the plain and ordinary meaning of the word can be ascertained by reference to a dictionary." Id.
We also find the dissent's reliance upon Gonzalez v. State, 596 So.2d 711 (Fla. 3d DCA 1992), misplaced. The defendant in Gonzalez was originally sentenced to two years pursuant to a plea agreement. The two year sentence was less than the statutory mandatory minimum of three years but within the guidelines range. The state then realized it had made a mathematical error in computing the guidelines range which resulted in resentencing. A sentence *117 to less than the mandatory minimum, pursuant to a plea bargain, is legal. Madrigal v. State, 545 So.2d 392 (Fla. 3d DCA 1989). Thus, the resentencing in Gonzalez was the increase of a legal sentence which violates double jeopardy.
However, in an abundance of caution, we certify the following question as one of great public importance:
IS A SENTENCE TO LESS THAN THE GUIDELINES RANGE WITHOUT WRITTEN REASONS AN "ILLEGAL SENTENCE" WITHIN THE MEANING OF RULE 3.800(a); AND, IF SO, CAN THE STATE PROPERLY SEEK TO HAVE SUCH A SENTENCE INCREASED TO THE GUIDELINES RANGE BY FILING A MOTION UNDER RULE 3.800(a) AFTER THE STATE HAS FOREGONE APPEALING THE SENTENCE UNDER SECTION 924.07(1)(i), FLORIDA STATUTES, AND RULE 9.140(c)(1)(J)?
AFFIRMED.
DELL, J., concurs.
FARMER, J., dissents with opinion.
FARMER, Judge, dissenting.
Karen Gartrell and her boyfriend were passengers in a car being driven by another man when he was stopped in St. Lucie County for speeding on I-95. According to the deputy sheriff, when he first saw the defendant she was lying down in the back-seat using her purse as a pillow. When the deputy learned that the driver's license had been suspended, he arrested him for speeding and for driving on a suspended license.
The deputy then asked if Gartrell had a license to drive the car away. They got out of the car, and Gartrell, standing near the trunk of the car, proceeded to look in her purse for the license. The deputy testified that Gartrell had tilted her purse in such a manner that he could not see exactly what she was doing. Even though, as he later conceded, she was under no suspicion and certainly not under arrest, he explained to her that she needed to hold her purse to allow him to see for his own safety whether there were any weapons inside.[2] At that point Gartrell moved the purse to give the deputy a more secure vantage. She placed it on the trunk of the car and began searching for the license.
As the deputy looked on, she "started pushing some objects down from the top of the purse down towards the bottom." The deputy noticed a kleenex with several blue, ziplock plastic bags partially concealed by the kleenex.[3] Although he could not see the contents, he deduced that it was marijuana, and Gartrell was arrested.[4] A subsequent search of the purse revealed a folded-over dollar bill which contained a white powder. In an outside zippered compartment of the purse, the deputy found a brown paper bag containing 86.25 grams of cocaine. Gartrell was charged with trafficking in cocaine and possession of marijuana.
At trial the state's evidence was substantially as described. She testified that, while she slept, her purse had been in an open area of the car (on the armrest) and was accessible to the two other men. At some point during the trip, she said, the driver woke her up and told her to remove *118 her purse from the armrest and that a policeman was behind them. According to Gartrell, she put her purse under her head, because there was no other room in the backseat, and continued sleeping. When the deputy later asked for her license, Gartrell said she did not want him to see the marijuana that she knew she was carrying, but said that she had no knowledge of the presence of cocaine in the purse. There was no contrary evidence produced by the state.
She moved for a judgment of acquittal at the close of all the evidence, arguing that the state failed to offer any positive evidence, other than its presence, that she actually knew she was carrying cocaine. In other words, she argued, the state had failed to offer any evidence which rebutted her hypothesis of innocence. The court denied the motion. The jury returned a verdict of guilty on both counts of the information: simple possession of a controlled substance, and possession to traffic in cocaine.
She was originally sentenced to incarceration for 1 year on the simple possession count and three years on the trafficking possession count. On a later motion filed by the state "to correct an illegal sentence," however, the court changed the sentence on the simple possession count to time served and, over the objection of the defendant, increased the period of incarceration on the trafficking possession count to 9 years. Defendant timely appealed. The state has neither appealed, nor cross-appealed, on the sentencing issue.

I. The Conviction.
Gartrell was charged in count II of the information with a violation of section 893.135(1)(b)1.a, Florida Statutes (1991) [trafficking possession], which provides in pertinent part:
Any person who knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 28 grams or more of cocaine as described in s. 893.03(2)(a)4. or of any mixture containing cocaine, but less than 150 kilograms of cocaine or any such mixture, commits a felony of the first degree, which felony shall be known as "trafficking" in cocaine. [e.s.]
When we refer to the element of "knowledge" in a criminal statute, we mean of course "guilty knowledge", "criminal knowledge", or "mens rea", all of which are different verbalizations of the same idea. Judges distinguish this kind of specific knowledge from the more general kind of knowledge covered by the concept of the general intent to do a certain act. The two kinds of knowledge are not the same thing in a criminal case and should not be used interchangeably. See Bauer v. State, 609 So.2d 608 (Fla. 4th DCA 1992); State v. Oxx, 417 So.2d 287, 290-91 (Fla. 5th DCA 1982).
In other words, it is not enough to show merely that the defendant accused of trafficking had possession of the substance; the state must also show that his possession was knowing, in the specific, criminal intent, or mens rea, sense. State v. Dominguez, 509 So.2d 917 (Fla. 1987); Way v. State, 475 So.2d 239 (Fla. 1985). Thus the clear language of this statute makes guilty knowledge of the actual substance an element of the crime. Dominguez, 509 So.2d at 918; Way, 475 So.2d at 240-41.
To illustrate, the trafficking statute should be compared with section 893.13(1)(f), Florida Statutes (1991) [simple possession], which says:
It is unlawful for any person to be in actual or constructive possession of a controlled substance unless such controlled substance was lawfully obtained from a practitioner or pursuant to a valid prescription or order of a practitioner while acting in the course of his professional practice or to be in actual or constructive possession of a controlled substance except as otherwise authorized by this chapter. Any person who violates this provision is guilty of a felony of the third degree * * *.
Unlike the trafficking statute, there is no element in the simple possession statute of guilty knowledge. Under this latter statute, if the general intent is present, a person found to have possession of a controlled *119 substance may be guilty regardless of whether the person actually knows that the substance is cocaine. The crime of simple possession is a "strict liability" offense; guilty knowledge is not an element of the crime, and the state has no burden in a prima facie case to show that the defendant knew precisely what the substance was.
In a malum prohibitum crime that lacks a specific criminal knowledge provision in the statute, however, if the defendant puts his general intent in issue he can be entitled to an instruction on the general intent to do the act charged or general knowledge of the act forming the basis for the charge. State v. Medlin, 273 So.2d 394 (Fla. 1973); Oxx, 417 So.2d at 289, n. 2. Hence, in spite of the clear knowledge element in the trafficking statute (but not in simple possession), the standard jury instructions for both statutes includes the following:
If a person has exclusive possession of a thing, knowledge of its presence may be inferred or assumed. If a person does not have exclusive possession of a thing, knowledge of its presence may not be inferred or assumed.
But this instruction is not the same thing as an instruction that the defendant must knowingly possess for trafficking purposes. Green v. State, 602 So.2d 1306, 1308 (Fla. 4th DCA 1992).
Neither the trafficking statute nor the simple possession statute refer to exclusive possession, as opposed to joint possession. The basis for the idea seems to have come from Frank v. State, 199 So.2d 117 (Fla. 1st DCA 1967). There the defendant was charged with possession of morphine and marijuana contrary to the following statute: "It is unlawful for any person to * * * possess, have under his control, * * * any narcotic drug, except as authorized by this [law]." 199 So.2d at 118. The court traced the statute to the Uniform Narcotic Drug Law and recognized that decisions under the uniform law had inferred the element of knowledge from the presence of the drug.
The inference presented no trouble where the defendant had exclusive possession of the premises on which the drug was found. Where the defendant's possession was non-exclusive, however, the court found that decisions under the uniform law did not permit an inference of knowledge from the mere fact of possession. 199 So.2d at 119-20. And so, the court concluded:
From the foregoing it appears to be established in this state that before one charged with unlawfully possessing narcotic drugs may be convicted, the state must establish beyond a reasonable doubt that the accused knew of the presence of the narcotic drugs on premises occupied and controlled by him, either exclusively or jointly with others. If the premises on which the drugs are found are in the exclusive possession and control of the accused, knowledge of their presence on such premises coupled with his ability to maintain control over them may be inferred. * * * If the premises on which the drugs are found is not in the exclusive but only in the joint possession by the accused, knowledge of the drugs' presence on the premises and the ability to maintain control over them by the accused will not be inferred but must be established by proof.
Frank ended with a reversal for a new trial in which defendant would be entitled to a specific instruction on intent. 199 So.2d at 121.
Frank relied to a great extent on Spataro v. State, 179 So.2d 873 (Fla. 2d DCA 1965), a decision of this court's predecessor. Spataro lived temporarily in a house with one Doles. Both were charged with possession of marijuana, but they were tried separately. At Spataro's trial, Doles testified as a state's witness that the second drawer of a dresser was Spataro's and that the other drawers were hers. The drugs were found in the second drawer. Doles swore she had no idea of their presence. Spataro testified in defense that everyone in the house had access to the room and that Doles "was in and out of [her] drawers." 179 So.2d at 876.
The state then called Doles back as a rebuttal witness and she testified that Spataro *120 had called Doles while the police were searching the premises before any arrest and had asked Doles: "Did they find the stuff in the gold purse?" Id. Spataro had earlier borrowed a gold purse from Doles. The police had found such a purse but it was empty. Spataro was convicted.
The issue on appeal in Spataro was, as here, whether there was any evidence of guilty knowledge in the record to support a conviction. In holding that there was evidence of guilty knowledge, however, the court emphasized that "[t]he defendant's knowledge of the presence of the narcotics could be inferred from [Spataro's] statement to Doles over the telephone." 179 So.2d at 876.
There is no such evidence in this case. No other person testified, e.g., that Gartrell had verbally acknowledged in some way the presence of the cocaine that she was seen placing cocaine in her bag, or that she had engaged in specific conduct from which knowledge of its presence might be permissibly inferred in the way it was in Spataro. Lacking here is any evidence, circumstantial or otherwise, from any source  other than its mere presence in an outer pocket of a purse available to two other people in an open area of an automobile  that Gartrell knowingly possessed cocaine.
In Murphy v. State, 511 So.2d 397 (Fla. 4th DCA 1987), this court said:
[W]hen contraband is found in a vehicle which is in the possession of two or more persons, circumstantial evidence of defendant's knowledge of the presence of the contraband must be consistent with the accused's guilt, inconsistent with innocence and must exclude every reasonable hypothesis except that of guilt.
511 So.2d at 399. See also Soler v. State, 547 So.2d 251 (Fla. 4th DCA 1989); Cockett v. State, 507 So.2d 1217 (Fla. 4th DCA 1987); Harvey v. State, 390 So.2d 484 (Fla. 4th DCA 1980); Manning v. State, 355 So.2d 166 (Fla. 4th DCA 1978); D.J. v. State, 330 So.2d 35 (Fla. 4th DCA 1976); and Townsend v. State, 330 So.2d 513 (Fla. 4th DCA 1976  all to the same effect. What is true for residential premises is even more true for automobiles.
Medlin makes clear that if the legislature has omitted the requirement of guilty knowledge in the text of a statute, then guilty knowledge is not an element of that crime. The simple possession statute is an example of such knowledge being omitted. Dominguez and Way make clear that where the legislature has expressly included guilty knowledge as an element of the crime, as it has done in the trafficking statute, then that specific knowledge is a separate element that must be proven by the state. Hence, for the state to be entitled to an inference of guilty knowledge, there must be some additional evidence  beyond the mere fact of possession  showing that the defendant actually knew that she had the substance charged.
The trafficking statute fails to state anywhere in its text that there is a statutory presumption of guilty knowledge arising from the mere presence of cocaine. To read a presumption of guilty knowledge from mere possession into the text is to construe the guilty knowledge requirement into oblivion  to treat the crime as though guilty knowledge is not an element. It makes the trafficking statute functionally indistinguishable from the simple possession statute, whose text lacks a guilty knowledge element. I find it very difficult to believe that, in placing a guilty knowledge requirement into the trafficking statute, the legislature intended to forbid precisely the same conduct that it criminalized in the simple possession statute. Nor can I indulge the conclusion that it intended for precisely the same proof to convict under the one as under the other.
I recognize and accept the principle that, as a general proposition, one is charged with knowing what one is carrying on one's person. That kind of constructive knowledge, however, is limited to those things over which one has had sole and exclusive possession and control, unaffected by any other person. Frank, 199 So.2d at 119-21. The presumption vanishes, however, upon uncontradicted evidence that a purse, as here, was in an open area where other *121 persons had access to it under circumstances where one might not know that someone else had used such access.
I do not believe that Wilcox v. State, 522 So.2d 1062 (Fla. 3d DCA 1988), can be fairly compared to this case. In that case, the defendant immediately grabbed the tote bag and ran away from the officers after being told that he was under arrest. Wilcox, 522 So.2d at 1064 ("However, when the police officers approached him, he immediately grabbed the bag."). The grabbing and running away supplied the extra element of guilty knowledge. There simply is no comparable fact in this case. Gartrell did not bolt and run when the officer told her he needed to see her license or even when he told her she was under arrest for having plastic bags [sic] in her purse.
The essential issue in this case is whether there was any evidence, apart from the mere fact of possession, offered by the state to show that Gartrell actually knew that she was carrying the cocaine in the outer pocket of her purse.[5] I am simply unable to discern any. The evidence shows without contradiction that she and her handbag were not alone in the car. For a time the bag was not unavailable under her sleeping head, but was where others in the car could have reached it and placed something in it without her knowledge. The substance was found in an outer compartment of the purse, not inside. It is thus not possible to infer or charge her with guilty knowledge upon mere proof of its presence in her bag, for the bag was in an open area of an automobile containing two other persons. The state thus had the burden of offering some other evidence of actual knowledge for its case to go to the jury. None was introduced.
The state argues that Gartrell's search of her handbag was done in a furtive way, thus evidencing guilty knowledge. In effect the state argues that we may draw a permissible inference of guilty knowledge from her conduct in doing an entirely lawful act in a furtive way. Here the state is contending, it should be clearly understood, that it can create a jury issue on a crucial element of criminal intent from mere circumstantial evidence of entirely lawful conduct. I cannot subscribe to that notion.
Women's handbags, though universally used, are uniquely personal. One could reasonably imagine few places more guarded. Even an innocent woman might be embarrassed to have the contents of her bag laid bare before the world. The expectation of privacy in them is manifest. A woman is entitled to look furtively into her bag in the presence of strangers precisely because of the nature of its lawful contents. Only rarely, and surely only with something more, should anyone be able to draw any sinister conclusions from her so doing. To hold otherwise is to convert the entirely human, and non-criminal, emotions of embarrassment or awkwardness or humiliation into evidence of guilty knowledge of a criminal act.
The state says that this kind of thinking is necessary to enable the police to get convictions for possession of controlled substances  that no conviction for trafficking possession would ever be likely if the police had to prove guilty knowledge. It is decidedly not the role of the courts to assist the police in getting convictions where established legal principles require otherwise. We are not mere instruments of the law enforcement branch of government. In any event, if any particular element of a statutory crime is unprovable, the legislature can tomorrow eliminate that element, here guilty knowledge under the trafficking statute, just as it has done for simple possession.
I, therefore, cannot agree that the state proved a prima facie case of trafficking possession to submit to a jury.

*122 II. The Sentence.

Even if the conviction could stand, however, the resentencing cannot. The trafficking possession count carried a minimum mandatory term of 3 years. Gartrell's guidelines score-sheet showed a permitted range of four and one-half to nine years. At her sentencing hearing, the judge imposed a sentence of 1 year on the simple possession count and 3 years on the trafficking possession count. A written judgment of conviction and sentence was entered on the same day, but it did not contain any reasons for the court's leniency.
Nine days after entry of the written sentence, the state filed a motion "to correct an illegal sentence." It argued that the court had "departed downward" without written reasons and that a fine of $50,000 is mandatory on the trafficking possession count.[6] Six days after it was filed, the motion was heard by a judge other than the one who had imposed the sentence. The state argued that the below guidelines term made the sentence illegal, as did the failure to impose a fine.
The defendant objected to any resentencing, pointing out that the hearing judge was not the sentencing judge, that the sentence was not illegal in that it did not exceed the statutory maximum, and that double jeopardy barred resentencing. The hearing judge observed that he had presided over the trial and that, while he had designated this case to be sentenced by another judge, he was under the impression that the only cases designated that day were pleas, not trials. He thereupon found that the original sentence was "void ab initio" and resentenced Gartrell to an effective sentence of nine years in prison.
Motions to correct an illegal sentence are covered by rule 3.800(a), Florida Rules of Criminal Procedure, which simply says that "[a] court may at any time correct an illegal sentence imposed by it or an incorrect calculation made by it in a sentencing guidelines scoresheet." There is no definition, however, as to what constitutes an illegal sentence.[7] The question is what makes a sentence illegal.
It seems to me that there are four possible categories of sentencing errors that could arguably be considered "illegal". First, there is the sentence that exceeds the maximum punishment fixed by statute for the crime: e.g., the maximum period of imprisonment for the crime is five years but the court sentences to six years. Second, there is the sentence that fails to impose the minimum punishment required by statute for the crime: e.g., the minimum mandatory period for the crime is three years but the court sentences to two years. Third, there is the sentence that exceeds the guidelines range but does not exceed, or is less than, the maximum allowed by statute for the crime: e.g., the guidelines range is four to nine years, while the statutory maximum is ten years, and the court sentences without an explanation to ten years. Fourth, there is the sentence that is less than the guidelines range but is equal to or greater than any statutory minimum mandatory period: e.g., the guidelines range is four to nine years while the minimum mandatory period is three years yet the court sentences without explanation to three years.
Everyone agrees that the first-category sentence is illegal. Plainly also, the increase of an illegal, first-category sentence upon resentencing is itself also an error of constitutional dimensions, at least where the defendant did not deceive the sentencing authority or thwart the sentencing process.[8]United States v. DiFrancesco, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 *123 (1980); Goene v. State, 577 So.2d 1306 (Fla. 1991). This court's statement to the contrary in its opinion in this case is unaccompanied by any citation of authority, an omission that cannot have been accidental. A moment's reflection discloses that it would be an eccentric construction of the Double Jeopardy Clause on resentencing from a reversal of the original sentence if, after imposing a sentence greater than allowed by law, a trial court could then validly impose a new sentence even harsher than the one already invalidated. If the former sentence is illegal then the resentence must be equally so.
The idea that a first-category sentence is illegal does not, however, compel the conclusion that sentences in any of the other three categories are equally illegal. To demonstrate this, especially as to fourth-category errors (the only kind of error involved here), one should examine the statutes governing appeals in criminal cases. Section 924.06, Florida Statutes (1991), provides that a defendant may appeal from "(d) A sentence, on the ground that it is illegal; or (e) A sentence imposed outside the range recommended by the guidelines authorized by s. 921.001. Similarly, section 924.07(1), Florida Statutes (1991), says that the state may appeal from "(e) The sentence, on the ground that it is illegal" and "(i) A sentence imposed outside the range recommended by the guidelines." The common ingredient in both sets of sentencing appeals is that there is one category for illegal sentences and an entirely separate one for guidelines departure sentences.
There is absolutely no reason to suppose that in using the statutory term, "illegal sentence", the drafters of rule 3.800(a) meant something different than the legislature did in the right-to-appeal statutes. In the first place, rule 3.800(a) comes directly from section 921.24, Florida Statutes (1969), which read: "A court may at any time correct an illegal sentence imposed by it in a criminal case." That statute was repealed by chapter 70-339, Laws of Florida, when the Florida Rules of Criminal Procedure were adopted. Similarly, section 921.25, Florida Statutes (1969), allowed the court to reduce  but not increase  a legal sentence within certain prescribed time limits. That statute, too, was repealed with the adoption of the procedural rules. Rule 3.800 was taken directly from sections 921.24 and 921.25.
These statutes predated the sentencing guidelines. When, however, the sentencing guidelines were adopted, the legislature added provisions to sections 924.06 and 924.07 allowing appeals of guidelines departure sentences. Rule 3.800(a) was also amended to add the words: "or an incorrect calculation made by it in a sentencing guidelines scoresheet."
The conclusion is thus unavoidable that the legislature did not intend the term "illegal sentence" to include fourth-category guidelines departure errors.[9] If the legislature had understood that the term "illegal" sentence encompassed a guidelines departure sentence improperly done (i.e. without written reasons), then there would have been no reason to have added the statutory provision for guidelines departure sentences. Similarly, if the rule drafters had intended guidelines calculations to be embraced by the term "illegal sentence", then there would have been no need to amend the rule to add the provision for guidelines calculations.[10]
The court's conclusion that the dictionary definition of "illegal" supplies the entire answer to what constitutes an illegal sentence *124 is beguilingly simple but quite incomplete. It fails to recognize, for example, that the term is "illegal sentence" not the word "illegal" standing alone. The conclusion thus fails to consider what noun is being modified, and in precisely what way, by the adjective "illegal".[11] To illustrate, the term "illegal interest" may refer to either a criminal act or merely a civil wrong. Hence, when the term is "illegal ____" (and here one can insert almost anything), the inquiry becomes twofold: "What is illegal, and how is it illegal?" The court's resort to a simple dictionary definition to supply the entire answer is attractive but imperfect.
The state having foresworn its obvious remedy of appeal in this case, the issue is whether it could then use rule 3.800(a) to accomplish the same end. The answer to that question is contained in Gonzalez v. State, 596 So.2d 711 (Fla. 3d DCA 1992). There the defendant was sentenced under a plea agreement with the state to a two-year term, which was less than a statutory minimum mandatory term. On the day after sentencing, the state filed a motion to vacate the sentence on the ground that it had agreed to the sentence only on the mistaken belief that the agreed sentence was within the guidelines. The trial court granted the state's motion and resentenced the defendant to a term of five and one-half years, effectually adding three and one-half years to the original sentence. On appeal, the Third District reversed. Chief Judge Schwartz explained the court's reasoning as follows:
It is entirely clear that the resentencing to a greater term after entry of a jurisdictionally permissible sentence which the defendant had commenced to serve was unequivocally a violation of his double jeopardy rights  one which cannot constitutionally be justified by the prosecution's simple unilateral mistake in recommending and concurring in the sentence. Troupe v. Rowe, 283 So.2d 857, 860 (Fla. 1973) ("Jeopardy had attached in petitioner's case and [the] sentence which had been imposed could not thereafter be increased (as the second assistant state attorney's position would do) in violation of defendant's constitutional guaranty not [to] be twice placed in jeopardy."); State v. Wagner, 495 So.2d 283, 284 (Fla. 2d DCA 1986) ("[S]ince Wagner has commenced service of his sentence, he may not be resentenced to a greater term of imprisonment. Such a sentence would constitute double jeopardy. Troupe v. Rowe, 283 So.2d 857 (Fla. 1973); Hinton v. State, 446 So.2d 712 (Fla. 2d DCA 1984)."); Macias v. State, 572 So.2d 22, 23 (Fla. 4th DCA 1990) ("[A]n increase of a lawful sentence is expressly prohibited by case law and constitutes double jeopardy."); Berry v. State, 547 So.2d 1273, 1274 (Fla. 1st DCA 1989) ("[The] court may not impose a greater sentence once [the] defendant starts to serve original sentence."); See Madrigal v. State, 545 So.2d 392, 395 (Fla. 3d DCA 1989) ("[T]he prosecutor had the right, and the binding duty if Madrigal complied, to recommend a sentence less than that provided by section 893.135(1)(b)(2), Florida Statutes (1985)."); State v. Collins, 482 So.2d 388 (Fla. 5th DCA 1985) (state agreement justifies downward departure); State v. Devine, 512 So.2d 1163 (Fla. 4th DCA 1987) (same); review denied, 519 So.2d 988 (Fla. 1987).
596 So.2d at 711-712.
Judge Schwartz's reasoning is entirely applicable to this case. Simply because the state styled its motion as one "to correct an illegal sentence" in this case, while the state styled its motion "to vacate the sentence" in Gonzalez, does not make any difference.[12] A defendant's double jeopardy right cannot be avoided merely by adjusting the title given to the motion. Moreover, if the state can agree to a below *125 guidelines departure sentence without written reasons for it, as we held in State v. Devine, 512 So.2d 1163 (Fla. 4th DCA), rev. denied, 519 So.2d 988 (Fla. 1987), then it obviously follows that fourth-category errors do not make a sentence illegal. An illegal sentence cannot become enforceable simply because the state agrees to it. The court's opinion today does not satisfactorily, for my taste, distinguish Gonzalez, and our decision is in direct conflict with it.[13] When our court hears different music than another court on the same issue, we should fully describe its melody and meter.
To expand on Judge Schwartz's reasoning, I think that we should not discount the fact that the right of the state to appeal an adverse order or judgment in a criminal case was virtually prohibited at common law. State v. Burns, 18 Fla. 185, 187 (1891). As the supreme court concluded in State v. Creighton, 469 So.2d 735 (Fla. 1985), the statutes allowing state appeals in criminal cases are strictly limited and carefully crafted exceptions designed to provide appellate review to the state where it is necessary as a matter of policy and where it does not offend constitutional principles. Cf. North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (harsher sentence upon resentencing after previous reversal may be imposed only upon objective information concerning identifiable conduct by defendant occurring after original sentencing); Morganti v. State, 573 So.2d 820 (Fla. 1991) (trial judge may not increase sentence upon resentencing unless increase is based on conduct occurring after imposition of original sentence).[14] The strictly controlled grants of appellate rights to the state in criminal cases must be narrowly read and limited to their precise provisions.
The fact that the state might have successfully appealed Gartrell's original sentence, see Cheshire v. State, 568 So.2d 908, 913 (Fla. 1990) (reversal of downward departure sentence imposed without written explanation), does not mean that the common law and constitutional policy can be evaded by the simple expedient of post-conviction motion practice by the state. If defendants are precluded from raising in a collateral attack non-constitutional errors in their conviction and sentence that could have been raised on direct appeal but were not, there is little reason to suppose that the state can do so. There is not a single case considering the subject directly that holds that the state can abandon the appellate right and achieve the same end by rule 3.800(a). Gonzalez and public policy are explicitly to the contrary.
I dissent.
NOTES
[1] After determining whether possession is actual or constructive, the next step is to determine whether it is exclusive or joint. If a person does not have exclusive but only joint possession of a thing, knowledge of its presence may not be inferred but must be established by proof. Frank v. State, 199 So.2d 117, 121 (Fla. 1st DCA 1967).
[2] There is no contention by the state that the officer ever asked for, or that Gartrell ever consented to, a search of her purse. She was certainly free to deny the officer's request but attempted to comply. Surely her attempt to allay his alleged fears for his safety cannot be converted into a consent to search her purse.
[3] At this point he had no reason, as he later testified, to suspect her of carrying a weapon. Consequently, he had no basis under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), or under section 901.151, Florida Statutes (1991), even to do a patdown for weapons, much less a full-blown search of her bag.
[4] It was shown later that her bag contained 2.5 grams of marijuana inside its main compartment. Gartrell moved to suppress all of the evidence seized and any testimony relating thereto. The trial judge denied the motion, apparently upon a holding that the appearance of the plastic bags into the officer's plain view operated to give the officer probable cause for the arrest. T. 24-25. Gartrell has not raised any issue on appeal as to the court's decision on the motion to suppress.
[5] Under State v. Law, 559 So.2d 187 (Fla. 1989), the burden is on the state to introduce competent, substantial evidence inconsistent with the defendant's theory of events. When a defendant moves for a judgment of acquittal, the evidence must be viewed in the light most favorable to the state. If the state fails to offer any evidence inconsistent with the defendant's hypothesis of innocence, however, the court must grant the judgment of acquittal.
[6] On appeal, the state has apparently abandoned a contention that the failure to impose a fine renders the sentence illegal.
[7] Nor, for that matter, is there any limitation on who may engage the court's corrective powers.
[8] All of the discussion in this opinion on the subject of an increase of a sentence upon resentencing assumes that the defendant has not deceived the sentencing authority or attempted to thwart the sentencing process. Intentional deception, or "thwarting" the sentencing process (whatever that means), is now recognized as, in effect, an estoppel to assert the double jeopardy right. See United States v. DiFrancesco, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980); Goene v. State, 577 So.2d 1306 (Fla. 1991).
[9] It necessarily follows that the original sentence is not void, as the state now contends. While it might be plausibly argued that an illegal sentence is void, surely there is no basis to believe that an improper, though legal, departure sentence is somehow void. It may be subject to reversal on appeal, but that hardly means it is void.
[10] That the rule drafters meant for the term "illegal sentence" in rule 3.800 to be understood in exactly the same sense as the legislature used the term is also seen in rule 9.140(c)(1)(I) and (J), which allow the state to appeal, respectively, an "illegal sentence" and "a sentence imposed outside the range recommended by the guidelines * * *." The separate classifications for appealable orders would be entirely superfluous if illegal sentences and guidelines departure or calculation errors meant the same thing.
[11] There is "illegal", and then there is "illegal". A thing may be (1) contrary to law, or it may be (2) forbidden by law, or it may be (3) merely unauthorized by law. These three conditions do not constitute identical conditions or circumstances.
[12] In fact, in Hinton v. State, 446 So.2d 712 (Fla. 2d DCA 1984), the court treated a "motion to vacate" the sentence as falling under rule 3.800(a).
[13] It logically follows that I agree with the court's decision to certify the question as one of great public importance.
[14] Moreover, if too-lenient sentences imposed as a result of misapplication of legal principles truly constituted illegal sentences, then decisions such as Brown v. State, 521 So.2d 110 (Fla. 1988) (erroneous imposition of sentence otherwise allowed by law does not permit increase of sentence to one legally allowable at first sentencing after appellate review), would make no sense.